UNITED STATES

v.

John H. WHITE, Jr., 141 50 6250, Aviation Jet Engine Mechanic Third Class (E-4), U. S. Navy.

NCM 76 2061.

U. S. Navy Court of Military Review.

Sentence Adjudged 9 June 1976.

Decided 24 Nov. 1976.

CDR A. W. Eoff, II, JAGC, USN, Appellate Defense Counsel.

LT Michael C. Farrow, JAGC, USNR, Appellate Government Counsel.

Before NEWTON, CRANDELL and GLADIS, JJ.

GLADIS, Judge:

Tried at a general court-martial bench trial appellant was convicted in accordance with his plea of an indecent assault in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1] The sentence approved by the convening authority consists of a bad conduct discharge, confinement at hard labor for 15 months, forfeiture of $268.00 per month for 15 months and reduction to pay grade E–2, with the discharge, confinement in excess of 4 months and forfeitures in excess of 6 months suspended.

Appellant assigns the following error: SINCE THE OFFENSE HAPPENED OFF–BASE AND HAD NO CONNECTION WITH APPELLANT'S MILITARY DUTIES, THE COURT LACKED JURISDICTION TO TRY THIS OFFENSE. *UNITED STATES. V. HEDLUND,* 2 M.J. 11 (1976).

We find jurisdiction and affirm.

These facts may be gleaned from the record of trial. Appellant, a petty officer, was assigned to the Aircraft Intermediate Maintenance Division (AIMD) at Naval Air Station, Pensacola, Florida. He met and became acquainted with the victim, a female seaman apprentice, who worked in the Aircraft Operational Maintenance tool room at the Naval Air Station while she was performing her duties there. The husband of the victim was a member of the Naval service, a nonrated airman who was also assigned to appellant's duty section. In January 1976 the victim encountered appellant while she was waiting for her husband in the AIMD parking lot on base. He "bothered" her, talking to her and "putting his hands all over" her. He would not stop although she told him to do so. In early February 1976 the victim encountered appellant at a market off base near her home. He came up to her and told her that he wished to follow her home and see where she lived. She refused, but he followed her home and asked to use the bathroom. She did not admit him to her home and he departed.

On the afternoon of 23 February 1976 appellant approached the victim's husband while they were mustering for duty and asked him to trade watches. The husband who had been assigned a watch from midnight to 0800 did not trade. The husband departed from his off base trailer home about eleven o'clock in the evening, leaving his wife behind. Shortly after midnight appellant came to the trailer, knocked on the door, waking the victim, and identified himself. He asked to talk to her and, after initially telling him that he had no business there because he knew her husband was on watch, the victim admitted him. They talked for a short time and then appellant committed an indecent assault upon the victim.

In order to determine whether an offense committed off base by a service member is service-connected within the meaning of *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and consequently whether it is triable by court-martial, the jurisdictional criteria enunciated in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), must be carefully weighed. *United States v. Moore,* 1 M.J. 448 (1976). The issue turns on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and

---

1. Appellant was arraigned on charges of attempted rape and assault with intent to commit rape, in violation of Articles 89 and 134, UCMJ, 10 U.S.C. §§ 889, 934. He pleaded not guilty to the attempt and assault with intent to commit rape charges, but guilty to the lesser offense of the assault charge, indecent assault. The prosecution withdrew the attempt charge, and amended the assault charge to conform to the pleas of the accused.

greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts. *Schlesinger v. Councilman,* 420 U.S. 738, at 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). Jurisdiction may not be predicated solely upon the military status of both the wrong-doer and the victim. *United States v. Hedlund, supra.* An *ad hoc* approach must be taken in each case, balancing the significant jurisdictional criteria. *Relford v. Commandant, supra.*

In *Relford,* the Supreme Court extracted from *O'Callahan,* 12 criteria by which service connection may be measured.

1. The serviceman's proper absence from the base.

2. The crime's commission away from the base.

3. Its commission at a place not under military control.

4. Its commission within our territorial limits and not in an occupied zone of a foreign country.

5. Its commission in peacetime and its being unrelated to authority stemming from the war power.

6. The absence of any connection between the defendant's military duties and the crime.

7. The victim's not being engaged in the performance of any duty relating to the military.

8. The presence and availability of a civilian court in which the case can be prosecuted.

9. The absence of any flouting of military authority.

10. The absence of any threat to a military post.

11. The absence of any violation of military property.

12. The offense's being among those traditionally prosecuted in civilian courts.

In *Relford* the Court stressed the following: "(a) The essential and obvious interest of the military in the security of persons and of property on the military enclave. . . . (b) The responsibility of the military commander for maintenance of order in his command and his authority to maintain that order. . . . (c) The impact and adverse effect that a crime committed against a person or property on a military base, thus violating the base's very security, has upon morale, discipline, reputation and integrity of the base itself, upon its personnel and upon the military operation and the military mission. (d) The conviction that Art. I, § 8, cl. 14, vesting in the Congress the power 'To make Rules for the Government and Regulation of the land and naval Forces,' means, in appropriate areas beyond the purely military offense, more than the mere power to arrest a serviceman-offender and turn him over to the civil authorities. The term 'Regulation' itself implies, for those appropriate cases, the power to try and to punish. (e) The distinct possibility that civil courts, particularly nonfederal courts, will have less than complete interest, concern, and capacity for all the cases that vindicate the military's disciplinary authority within its own community. . . . (f) The very positive implication in *O'Callahan* itself, arising from its emphasis on the absence of service-connected elements there, that the presence of factors such as geographical and military relationships have important contrary significance. (g) The recognition in *O'Callahan* that, historically, a crime against the person of one associated with the post was subject even to the General Article. The comment from Winthrop, . . . Military Law and Precedents 724 (2d ed. 1896, 1920 Reprint):

'Thus such crimes as theft from or robbery of an officer, soldier, post trader, or camp-follower * * * inasmuch as they directly affect military relations and prejudice military discipline, may properly be—as they frequently have been—the subject of charges under the present Article. On the other hand, where such crimes are committed upon or against civilians, and not at or near a military camp or post, or in breach or violation of a military duty or order, they are not in

general to be regarded as within the description of the Article, but are to be treated as civil rather than military offenses.' (Footnotes omitted.)

. . . certainly so indicates . . . .
(h) The misreading and undue restriction of *O'Callahan* if it were interpreted as confining the court-martial to the purely military offenses that have no counterpart in nonmilitary criminal law. (i) Our inability appropriately and meaningfully to draw any line between a post's strictly military areas and its nonmilitary areas, or between a serviceman-defendant's on-duty and off-duty activities and hours on the post."

In *United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976), the Court of Military Appeals had occasion to consider whether off base transfer of three pounds of marijuana to a fellow serviceman was service connected. Weighing the *Relford* criteria, the Court found that the following four factors were sufficient to vest a court-martial with jurisdiction.

1. The formation of the criminal intent for the offense on-post.
2. The substantial connection between the defendant's military duties and the crime.
3. The transferee's being engaged in the performance of military duties, known to the defendant, at the time the agreement to transfer was reached.
4. The threat posed to military personnel, and hence the military community itself, by the transfer of a substantial quantity of marihuana to a fellow soldier who was a known drug dealer.

In *Relford v. Commandant, supra*, the Supreme Court emphasized that the presence of factors such as geographical and military relationships have important jurisdictional significance. Although the military status of the victim standing alone is not sufficient to establish jurisdiction, it is a factor which must be weighed in the *ad hoc* determination of the jurisdictional issue. The Court of Military Appeals found that the off base offenses of robbery and kidnapping were not service connected although the victim was a serviceman and an intent to rob was formulated on base in *United States v. Hedlund, supra.* The victim was an unauthorized absentee whose military identity was apparently unknown to the accused. The accused had formulated no intent to rob servicemen, but merely planned to rob hitchhikers off base. In *United States v. Wilson*, 2 M.J. 24 (C.M.A.1976), the Court found no jurisdiction over the off base offenses of robbery and assault although the accused knew that the victim whom he had met off base on the evening of the offense was a serviceman. In both *Hedlund* and *Wilson* the military High Court found that the only connection between the offenses and the military establishment—other than the military status of the accused—was the military status of the victim. In cases of offenses involving abuse of military status, a substantial relationship between the offense and the military duties of the accused or other service members, or a substantial threat to the military community, the Court of Military Appeals has found service connection and jurisdiction over off base offenses. *United States v. Moore, United States v. McCarthy*, both *supra.*

Noting that violation of the military interest in protecting the personal security of its members can have an adverse impact upon overall military effectiveness, appellate government counsel contends that the status of the victim coupled with appellant's use or misuse of his own military status and that of his victim's husband to facilitate commission of his offense is a sufficient basis for jurisdiction.

■ We find that appellant's offense had military significance. The military relationships in this case are significant. The military status of the victim was not the sole factor relating appellant's crime to the military community. Appellant initially became acquainted with the victim while she was performing her military duties on base and he apparently was in a duty status. He initially foisted his unwanted attentions

upon her on base. By reason of his military status and duty assignment he was able to ascertain from the victim's husband that he would be on base performing his military duty and unavailable to thwart appellant's lecherous object. While on base and mustering with the duty section, appellant formulated the intent to commit a crime off base involving the victim. He waited until the husband was on duty and went to the victim's off-base home, gaining admission because the victim recognized her fellow serviceman. The crime posed a threat to the peace and security of appellant's unit. A sexual assault by a petty officer upon the wife of a nonrated man from the same unit and duty section poses a serious threat to good order and discipline within the unit. Military jurisdiction provides a deterrent to such offenses and to the temptation to the victim or his spouse to wreak vengeance against the wrongdoer. There was a substantial connection between the crime, appellant's military duties, and the military duties of the victim's husband. The intent to commit a crime was formulated on base. Under the circumstances the military interest in deterring the offenses was substantially greater than that of the civilian community and could not be adequately vindicated in the civilian courts. Therefore appellant's offense was service connected within the meaning of *O'Callahan* and *Relford*. The court-martial which tried appellant had jurisdiction over the offense.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Senior Judge NEWTON and Judge CRANDELL, concur.