**UNITED STATES**

v.

**Ricky H. BUTTS, 220 64 6493, Private First Class (E–2), U. S. Marine Corps.**

**NCM 76 0203.**

U. S. Navy Court of Military Review.

Sentence Adjudged 22 July 1975.

Decided 30 Dec. 1976.

CDR A. W. Eoff, II, JAGC, USN, Appellate Defense Counsel.

LT Michael C. Farrow, JAGC, USNR, Appellate Government Counsel.

Before NEWTON, CRANDELL and DUNBAR, JJ.

NEWTON, Senior Judge:

On the afternoon of 19 May and into the morning hours of 20 May 1975 a party was attended by several Marines at an off-base trailer park. Some of those attendees lived at the trailer park. The consumption of alcoholic beverages occurred at the party— principally beer and wine. The party degenerated into an intoxicated melee between the servicemen, because of some real or fancied insult directed toward one of the sometime hosts of the party—our appellant. Injury was added to insult, for appellant was overrun by an automotive van, driven by Private K, after the occurrences giving rise to the charges. Fortunately, no serious injury appears to have been inflicted on appellant by that vehicular confrontation.

At special court-martial trial, appellant was convicted contrary to his pleas of battering Private K with his fists, of battering Private First Class A with his fists, of assaulting Private First Class A with a dangerous weapon (nunchaks), and of communicating a threat to kill Private K two days later. Trial was by judge alone. Appellant's sentence, as approved prior to reaching this court, consisted of a bad conduct discharge, 3 months confinement, forfeiture of $220.00 pay each month for 3 months and reduction to pay grade E–1.

The sole issue raised by appellant in his initial appeal to this Court concerned the adequacy of proof of the charge of assault with a dangerous weapon. The Court found appellant's contention had merit. The findings of guilty of that offense were set aside and the offense was dismissed. United States v. Butts, No. 76 0203 (N.C.M.R. 13 July 1976). Reassessment of the sentence at that time resulted in approving the sentence previously awarded,

due principally to the conviction of communicating a threat to kill K and because of a previous special court-martial conviction for assaultive behavior.

Appeal to the United States Court of Military Appeals, without specific assignment of error, resulted in a grant of review on the issue of whether court-martial jurisdiction existed in light of the decisions in *United States v. McCarthy*, 2 M.J. 26 (1976), and *United States v. Hedlund*, 2 M.J. 11 (1976). This Court's decision of 13 July was vacated and the record remanded for further consideration. *United States v. Butts*, 2 M.J. 152 (1976).

Appellant now contends that, since the offenses occurred off-base while appellant was on liberty and had no on-base nexus, the court-martial lacked jurisdiction, citing *McCarthy* and *Hedlund, supra.*

The dormant jurisdictional issue in this case was recognized and considered by this Court on initial review. It was not addressed at the time for the following briefly stated reasons, not necessarily listed in order of importance.

a. The case was one involving service personnel—both the accused and the victims. *See* citations fn. 1, *Hedlund, supra* at 2 M.J. at 13.

b. The jurisdictional issue was not raised by appellant.

c. A pervasive and overriding military interest in exercising court-martial jurisdiction was considered to exist under the facts of the case.

d. The issue was considered impotent.

The omission of discussion of the jurisdictional issue is regretted. We are, and were then, in full accord with the rule and comment requiring more than cursory consideration of jurisdictional issues, set out in footnote 1, *McCarthy, supra* at 2 M.J. at 28. Effort has been and will continue to be made to ensure compliance therewith in all areas of cognizance wherein this Court acts. Further, we note the pressing need for detailed examination of facts at trial to establish court-martial jurisdiction prior to arrival of the issue at the appellate level.

Turning to consideration of the law, as recently elaborated by the United States Court of Military Appeals, to determine service connection-jurisdiction, we again conclude that court-martial jurisdiction existed over this appellant and these offenses.

Study of those recent decisions impels the conclusion that the criteria used to measure service connection, as enunciated in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), are merely tools of definition, albeit most important ones, to be used to determine whether or not court-martial jurisdiction is viable under the law. The criteria define the law as to court-martial jurisdiction. They do not state the rule of law. Those criteria are not exclusive, nor are they intended to be all inclusive. Nor, do numerical preponderances of the criteria necessarily dictate the result in a given case. The measuring criteria are:

1. The serviceman's proper absence from the base.

2. The crime's commission away from the base.

3. Its commission at a place not under military control.

4. Its commission within our territorial limits and not in an occupied zone of a foreign country.

5. Its commission in peacetime and its being unrelated to authority stemming from the war power.

6. The absence of any connection between the defendant's military duties and the crime.

7. The victim's not being engaged in the performance of any duty relating to the military.

8. The presence and availability of a civilian court in which the case can be prosecuted.

9. The absence of any flouting of military authority.

10. The absence of any threat to a military post.

11. The absence of any violation of military property.

One might add still another factor implicit in the others.

12. The offense's being among those traditionally prosecuted in civilian courts.

Although it is difficult to conceive additional criteria which may be applied not related to those listed, there is no reason to suppose such a task is beyond possibility and will not be accomplished in future cases. What is left then is to determine the rule of law, to which the criteria apply, as to when court-martial jurisdiction occurs.

■ Analysis of the recent decisions by the United States Court of Military Appeals, with emphasis on the decision in *United States v. McCarthy, supra,* leads to the conclusion that the applicable rule as to the existence of viable court-martial jurisdiction may be stated as follows.

Court-martial jurisdiction exists over offenses committed by service personnel when military interest in deterring the offense is distinct and pervasive, and is overridingly greater than that of civilian society, thereby being better vindicated by the court-martial process.

The *O'Callahan/Relford* criteria may be utilized to determine proper application of the rule, always bearing in mind that exercise of court-martial jurisdiction must be strictly limited to ensure an offender's indictment and trial by jury with their related rights, in all but the most unusual case in which military interest becomes supreme because that interest is spread throughout and surrounds the particular case. *United States v. Williams,* 2 M.J. 81 (1976); *McCarthy, supra; Hedlund, supra; United States v. Moore,* 1 M.J. 448 (1976); *United States v. Tucker,* 1 M.J. 463 (1976); *United States v. Uhlman,* 1 M.J. 419 (1976); *United States v. Black,* 1 M.J. 340 (1976).

Prior to addressing the instant case one additional factor should be noted concerning the decisions herein cited. The military's High Court when discussing the need for jurisdictional analysis has been reluctant to find a distinct lack of jurisdiction, or to set aside the conviction in the cases before it, except where proof of jurisdiction is totally lacking or where an accused has been absorbed into a civilian community before he commits an offense. Rather, the need for further analysis to ensure that there is existing jurisdiction is stressed by the court. Previous perfunctory approaches to determine jurisdictional issues give rise to the criticism which occurs. What the Court has said in many of its decisions is that it is not convinced court-martial jurisdiction exists—not that jurisdiction was lacking. A detailed and thorough analysis of jurisdictional issues is that which is required. Such analysis will, hopefully, simplify resolution of the jurisdictional issues. Citations, *supra.*

■ Prior to applying the rule and the jurisdictional measuring criteria to appellant's offenses, the following facts of record are noted: appellant and the victims of his offenses were members of the same Marine Air Base Squadron; the party invitees, by appellant's own testimony, were people (Marines) who lived "far away from home"; only military personnel and their dependents/girl friends were involved in the circumstances giving rise to the incident; and the occurrence of fighting at the party precipitated a threat to injure, that is kill, a fellow serviceman two days after the fight.

The following *O'Callahan/Relford* criteria indicate existence of military interest.

1. There was a connection between military duties and the offenses which were committed, for here a feud obviously carried over from a fistic altercation which occurred while the participants were on liberty. The ill feeling precipitated by the fight therefore made the likelihood of further violence on base probable. Appellant had a duty to refrain from such conduct. U. S. Navy Regulations, 1973, Art. 1103. Additionally, members of the same unit

were involved in the incidents and would not have been likely to associate but for that fact. Anger amongst unit members thus existed to the detriment of duty performance.

2. There was flouting of military authority since physical injury to personnel runs contrary to a commander's responsibility for ensuring the welfare of his personnel and the readiness of his command. Further, the exhibited conduct can only tend to destroy morale and effectiveness of a unit. Navy Regs, Arts. 0702, 0737 and 1102 (1973).

3. There was a threat to security of a military post inasmuch as the altercants were unlikely to observe the niceties of geographical boundary demarcations in continuation of their combative behavior.

4. Brawling among servicemen is hardly a crime traditionally prosecuted in civilian courts. There is little room to doubt that a military organization which impacts itself on a civilian community in peace or in war has a responsibility—even a duty—to ensure that its personnel do not run amok and thereby place that community in jeopardy. To say that the community is responsible for its own protection in such a situation ignores the practical considerations involved. Such occurrences can and do happen. They happen whether a peacetime, pseudo-peacetime or wartime situation exists. A civilian community's ability to control groups of personnel from military units is minimal, if for no other reason than, because continuous control of military non-residents of the community cannot be exercised, as the military traditionally exercises that control. As a consequence a military interest in controlling offenders or potential offenders in the civilian community becomes a necessary overriding force, except where a serviceman is absorbed into the community as an individual with no obvious military connection. No community absorption is evident in this case.

The foregoing criteria are taken to show that the military interest in deterring the offenses charged is distinct and pervasive. It is overridingly greater than that of civil-ian society and is better vindicated here by court-martial process. The entire venture giving rise to the offenses involved Marines associated within the same military unit, who would not have so associated or gone on liberty together but for their military connection. They went on liberty as members of a military unit—not as members of the civilian community. The circumstances involved warrant trial by court-martial. We find court-martial jurisdiction.

Accordingly, only the findings of guilty of Charge I and specifications 1 and 2 thereunder and of Charge II and specification 2 thereunder, and the sentence, as approved prior hereto are reaffirmed.

Judge CRANDELL and Judge DUNBAR concur.