**UNITED STATES**

v.

**Nicholas Anthony RUGGIERO, 048 52 6718, Private First Class (E–2), U. S. Marine Corps.**

**NCM 76 0912.**

U. S. Navy Court of Military Review.

Sentence Adjudged 12 Dec. 1975.

Decided 19 Jan. 1977.

LCDR Carl H. Horst, JAGC, USN, Appellate Defense Counsel.

LT Patrick A. Fayle, JAGC, USN, Appellate Government Counsel.

Before NEWTON, CRANDELL and GLADIS, JJ.

GLADIS, Judge:

This is a companion case to *United States v. Payne*, No. 76 0796 (N.C.M.R. 17 May 1976), and *United States v. Green*, No. 76 0735 (N.C.M.R. 9 April 1976). Appellant was convicted, contrary to his pleas, by a general court-martial sitting with members, of rape, communication of threats, and indecent assault, in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920 and 934. He was acquitted of other charges alleging attempted murder, attempted sodomy, conspiracy to commit rape, rape, and two assault offenses, in violation of Articles 80, 81, 120, and 128, UCMJ, 10 U.S.C. §§ 880, 881, 920 and 928. The approved sentence includes a bad conduct discharge and confinement at hard labor for 4 years.

Appellant assigns the following errors:

I. APPELLANT'S TRIAL BY COURT–MARTIAL WAS BARRED BY NAVY REGULATIONS ABSENT THE PRIOR EXPRESS APPROVAL OF THE SECRETARY OF THE NAVY.

II. THE COURT–MARTIAL LACKED JURISDICTION TO TRY APPELLANT AS A RESULT OF THE FACT THAT HIS ENLISTMENT WAS CONTRARY TO MARINE CORPS REGULATIONS ABSENT AN APPROPRIATE WAIVER WHICH WAS NOT SOUGHT OR OBTAINED.

III. THE COURT–MARTIAL LACKED JURISDICTION TO TRY APPELLANT FOR RAPE AND THE RELATED OFFENSES WHICH OCCURRED OFF–BASE, OFF–DUTY, OUT OF UNIFORM AND WERE NOT OTHERWISE SERVICE CONNECTED.

IV. APPELLANT WAS DENIED A FAIR TRIAL AS A RESULT OF THE CUMULATIVE ERRORS OCCURRING AT TRIAL.

A. THE MILITARY JUDGE ERRED TO APPELLANT'S SUBSTANTIAL PREJUDICE IN GRANTING THE GOVERNMENT'S MOTION FOR APPROPRIATE RELIEF FOR A GAG ORDER AGAINST THE ACCUSED.

B. APPELLANT WAS SUBSTANTIALLY PREJUDICED BY TRIAL COUNSEL'S IMPROPER ARGUMENT ON FINDINGS.

C. APPELLANT WAS SUBSTANTIALLY PREJUDICED AS A RESULT OF PROSECUTORIAL MISCONDUCT.

V. THE EVIDENCE OF RECORD IS INSUFFICIENT TO ESTABLISH APPELLANT'S GUILT BEYOND REASONABLE DOUBT.

A. THE LACK OF A FRESH COMPLAINT RENDERS THE EVIDENCE INSUFFICIENT TO CONVICT.

B. THE PROSECUTRIX TESTIMONY IS WHOLLY UNWORTHY OF BELIEF.

VI. APPELLANT WAS SUBSTANTIALLY PREJUDICED BY TRIAL COUNSEL'S ARGUMENT ON SENTENCING USING GENERAL DETERRENCE AS A BASIS FOR ADJUDGING A SENTENCE IN APPELLANT'S CASE.

VII. THE MILITARY JUDGE ERRED TO APPELLANT'S SUBSTANTIAL PREJUDICE BY FAILING TO INSTRUCT THE COURT THAT THE OFFENSE ALLEGED AT SPECIFICATION 5 OF CHARGE V, ALLEGING COMMUNICATION OF A THREAT TO INJURE, WAS ALSO MULTIPLICIOUS WITH THE OFFENSE OF RAPE AS SET FORTH AT SPECIFICATION 1 OF CHARGE III.

VIII. THE MILITARY JUDGE'S INSTRUCTIONS ON SENTENCING SERVED TO DIVEST THE COURT OF ITS IMPARTIAL ROLE AS THE SENTENCING AUTHORITY.

IX. APPELLANT'S SENTENCE, AS APPROVED THUS FAR, IS INAPPROPRIATELY SEVERE AS A RESULT OF THE GROSS DISPARITY BETWEEN THE SENTENCES, AS APPROVED, FOR APPELLANT AND THE CO–ACTORS INVOLVED WHO WERE TRIED SEPARATELY.

We find no prejudice and affirm.

I. Civilian Dismissal of Charges

■ Appellant contends that his court-martial was barred by sec. 0107, *Manual of the Judge Advocate General* (JAGMAN) which provides that a person in the Naval service who has been tried in a domestic or foreign court shall not be tried by court-martial for the same acts without prior permission of the Secretary of the Navy.[1]

---

1. JAGMAN, sec. 0107 contains the following language:

0107 RESTRICTIONS ON EXERCISE OF COURT–MARTIAL JURISDICTION.

. . . . .

e. Cases which have been adjudicated in domestic or foreign criminal courts.

(1) Policy. A person in the naval service who has been tried in a domestic or foreign court, whether convicted or acquitted, or whose case has been "diverted" out of the

Upon the basis of a complaint filed by the rape victim, a Norfolk, Virginia magistrate found probable cause to believe appellant had committed the felonies of rape and attempted sodomy by force, in violation of sec. 18.1–44 and 18.1–212, Code of Virginia, and issued felony warrants for his arrest. Appellant was delivered by military authorities to civilian authorities pursuant to the warrants and appeared at a preliminary hearing in the Norfolk General District Court, Criminal Division. After hearing the sworn testimony of the victim, appellant and alleged co-actors Lance Corporal G and Private First Class P, another magistrate concluded that appellant ought not to be held for trial, and dismissed the complaint for lack of evidence. The case was subsequently reviewed in the Office of the Commonwealth's Attorney for the City of Norfolk, and it was determined that a grand jury indictment would not be sought because of lack of evidence.

Appellate defense counsel conceded during oral argument that under Virginia law jeopardy did not attach and that dismissal of the complaint at the preliminary hearing did not bar a trial in the Virginia courts. Therefore, the preliminary hearing was not a trial within the meaning of JAGMAN sec. 0107e. It was also neither a diversionary proceeding nor a juvenile adjudication. Consequently, appellant was not "tried" within the meaning of sec. 0107 and his court-martial was not barred thereby. Appellant's first assignment of error lacks merit.

## II. Validity of Enlistment

Appellant argues in his second assignment of error that the court-martial lacked jurisdiction because he was enlisted contrary to Marine Corps regulations. Prior to his enlistment, appellant had been tried as a youthful offender for fourth degree larceny, a misdemeanor, and received a 30 day suspended sentence. Applicable regulations at the time of appellant's enlistment required a "moral" waiver where the applicant had an adverse adjudication as a juvenile for adult misdemeanors, including petty larceny. MCO P1100.61c, par. 2111.3. Although appellant fully disclosed his record and the recruiting officer, a Marine Corps captain, recommended that a waiver be granted, apparently waiver approval was never obtained from an appropriate waiver authority. The offenses of which appellant was convicted occurred almost 3 years after he enlisted.

Citing *United States v. Dunks*, 1 M.J. 254 (1976), and *United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975), appellant submits that where an applicant makes known his disqualification to the recruiter and thereafter the agency fails to abide by its regulations, the enlistment is void. He also alleges recruiter misconduct, claiming that the recruiter apparently obtained details concerning his juvenile record from a local official in violation of Connecticut law.

■ The necessary prerequisite to effect a voluntary change in status from civilian to soldier is a valid enlistment contract or a legitimate constructive enlistment. *United States v. Russo, supra.* In *Russo*, the Court of Military Appeals noted that fairness prevents the Government from relying upon a constructive enlistment as a jurisdictional base where Government agents acted improperly in securing an individual's enlistment and that the Government would be obligated to terminate an enlistment where a recruiter knowingly enlisted or aided in enlisting an individual

---

regular criminal process for a probationary period, or whose case has been adjudicated by juvenile court authorities, shall not be tried by court-martial for the same act or acts, except in those unusual cases where trial by court-martial is considered essential in the interests of justice, discipline, and proper administration within the naval service. Such unusual cases shall not be re-

ferred for trial without specific permission as provided below.

　　.　　.　　.　　.　　.

(3) Procedure
(a) . . . No case described . . . above shall be referred for trial by general court-martial or special court-martial without the prior permission of the Secretary of the Navy. . . .

who gave timely notice that he was disqualified for military service. 23 U.S.C.M.A. at 513, 50 C.M.R. at 652, 1 M.J. at 136 citing *United States v. Barrett*, 23 U.S.C.M.A. 474, 50 C.M.R. 493, 1 M.J. 74 (1975); *United States v. Brown*, 23 U.S.C.M.A. 162, 48 C.M.R. 778 (1974). In *United States v. Robinson*, 1 M.J. 914 (N.C.M.R.1976), *pet. den.* (No. 32,458, U.S.C.M.A. 22 July 1976), this Court distinguished *Russo* and similar cases on the grounds that in those cases the accused was absolutely disqualified from legally enlisting and was enabled to fraudulently enlist only through misconduct on the part of the recruiter. In *Russo*, the military High Court held that where recruiter misconduct amounts to a violation of the fraudulent enlistment statute, Art. 84, UCMJ, 10 U.S.C. § 884, the resulting enlistment is void as contrary to public policy. In this case there is no such conduct. There is no evidence of recruiter misconduct. A recruiter who had notice of possible moral disqualification of an applicant for enlistment would indeed be remiss if he did not comply with enlistment regulations and conduct an inquiry concerning the applicant's juvenile offenses.[2] Compliance with a lawful recruiting regulation does not render a recruiter guilty of misconduct. *See* U.S. Constitution, Art. VI; 10 U.S.C. § 504; *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

■ The misconduct which voids an enlistment and prevents the Government from relying on a constructive enlistment as a jurisdictional base involves connivance by Government agents to violate applicable recruiting regulations in order to procure a fraudulent enlistment. *See United States v. Russo, supra; United States v. Little,* 1 M.J. 476 (1976).

■ In this case there was neither a statutory nor a nonwaivable regulatory bar to appellant's enlistment. *Cf. United States v. Brown, supra; United States v. Burden,* 23 U.S.C.M.A. 510, 50 C.M.R. 649, 1 M.J. 89 (1975). The Government was under no obligation to terminate his enlistment. *Cf. United States v. Russo* and *United States v. Brown*, both *supra*. There was no misconduct, no connivance of Government agents to assist in procuring a fraudulent enlistment. Appellant's enlistment was not coerced. He did not protest or seek release. *Cf. United States v. Catlow*, 23 U.S.C.M.A. 142, 48 C.M.R. 758 (1974). The defect complained of is no more than an administrative oversight in failing to obtain a waiver of a juvenile misdemeanor adjudication. The original defect paled and became insignificant through the passage of time during which appellant accepted pay and emoluments. The necessary prerequisite to effect a voluntary change in status from civilian to soldier is a valid enlistment contract or a

2. The Marine Corps Military Personnel Manual, MCO P1100.61C, par. 2111.1c contains the following provision:

If an applicant admits to a civil record, or if the enlistment agency has reason to believe such a record exists, enlistment action will be held in abeyance pending a complete investigation of the facts. Inquiry will be made to civil authorities concerning the applicant's character, rehabilitation, if appropriate, actual offenses committed, circumstances involved, disposition by the courts, actual confinement served, and whether any form of civil restraint; i. e., confinement, parole, probation, or suspension of sentence imposed by either a criminal or juvenile court, exists. Any other information deemed relevant to an evaluation of the case should also be requested. Evaluation by the civil court and its probation officers should be given careful consideration. When civil authorities refuse

to divulge information, the enlistment will be held in abeyance and the applicant advised that the burden of furnishing the information is upon him. It must be explained to applicants that in furnishing information with respect to prior convictions by criminal courts, or prior adverse adjudications by juvenile courts, disclosure thereof is required regardless of whether or not, after such convictions or adjudications, probation is imposed; no sentence is executed; execution of a sentence is deferred, delayed, or suspended; or whether, by local law, custom, or procedure, charges, convictions or juvenile adjudications are dismissed, withheld, or expunged from criminal or juvenile records after the expiration of certain periods of time, the payment of a fine, completion of periods of confinement, or completion of a period of probation. We find that the above regulation does not require a recruiter to violate local law.

legitimate constructive enlistment. *United States v. Russo, supra.* Assuming without deciding that appellant's original enlistment was invalid, under the circumstances of this case we find a legitimate constructive enlistment. The second assignment of error lacks merit.

### III. Service Connection

■ Appellant maintains that the offenses of which he stands convicted were not subject to court-martial jurisdiction because they occurred off-base and were not otherwise service-connected. The victim of the offenses was a woman Marine, a corporal.

The following facts are gleaned from the record of trial. On the evening of 17 June 1975, appellant and his companions, Lance Corporal G and Private First Class P, went to the enlisted club on base where they met the victim, Corporal L. She was a friend of P, with whom she had had intercourse on several previous occasions, and no stranger to appellant who had on a previous occasion surprised her in his BEQ room while she was intimate with his roommate. Apparently all four Marines had been billeted in the same BEQ building. L initially met P when they were assigned to the same working detail in the barracks and their friendship progressed as she saw him while working in the barracks. (R. 73). They were intimate in their BEQ rooms (R. 242). After their encounter in his BEQ room, L saw appellant frequently while he was working driving a bus, and at the enlisted club. G met appellant for the first time at the enlisted club on 17 June 1975, but he knew of her poor reputation for chastity on base. (R. 223, 224).

P and L talked about their military orders and danced at the club on 17 June. (R. 247). Both were scheduled to be detached on 30 June. P had been ordered to Okinawa, L to Philadelphia. At closing time they decided to obtain some beer. G and appellant accompanied them to a 7–11 Store off-base where P and appellant bought a case of beer. L and G remained in the car while L talked about her orders. P was driving L's car. They went to the home of a friend of P's near the beach in Oceanview, Norfolk, Virginia. The friend was not home and the four walked on the beach in order to drink beer. Appellant threatened and brutally raped L. Then P attempted intercourse with her. Appellant subsequently committed an indecent assault upon her while G was attempting intercourse with her.[3] G saw someone on the beach and believed that person went to notify the police. Appellant dragged L across the sand and threw her into the water. P helped her out of the water and they walked back to the car. Appellant, who weighed 215 or 220 pounds and had been an amateur boxer, repeatedly slapped L in the back of the head in order to hurry her. P drove them back to the base.

■ In order to determine whether an offense committed off-base by a service member is service-connected within the meaning of *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and consequently, whether it is triable by court-martial, the jurisdictional criteria enunciated in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), must be carefully weighed. *United States v. Moore*, 1 M.J. 448 (1976). The issue turns on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts. *Schlesinger v. Councilman*, 420 U.S. 738 at 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). Jurisdiction may not be predicated solely upon the military status of both the wrongdoer and the victim. *United States v. Hedlund*, 2 M.J. 11 (1976). An *ad hoc* approach must be taken in each case, bal-

---

**3.** Appellant denied raping L. Appellant, P and G testified that L voluntarily had intercourse with P on the beach while appellant and G watched. The three men denied that appellant had intercourse with or touched L.

ancing the significant jurisdictional criteria. *Relford v. Commandant, supra.*

In *Relford*, the Supreme Court extracted from *O'Callahan*, 12 criteria by which service connection may be measured.

1. The serviceman's proper absence from the base.
2. The crime's commission away from the base.
3. Its commission at a place not under military control.
4. Its commission within our territorial limits and not in an occupied zone of a foreign country.
5. Its commission in peacetime and its being unrelated to authority stemming from the war power.
6. The absence of any connection between the defendant's military duties and the crime.
7. The victim's not being engaged in the performance of any duty relating to the military.
8. The presence and availability of a civilian court in which the case can be prosecuted.
9. The absence of any flouting of military authority.
10. The absence of any threat to a military post.
11. The absence of any violation of military property.
12. The offense's being among those traditionally prosecuted in civilian courts.

In *Relford* the Court stressed the following:

"(a) The essential and obvious interest of the military in the security of persons and of property on the military enclave. . . . (b) The responsibility of the military commander for maintenance of order in his command and his authority to maintain that order. . . . (c) The impact and adverse effect that a crime committed against a person or property on a military base, thus violating the base's very security, has upon morale, discipline, reputation and integrity of the base itself, upon its personnel and upon the military operation and the military mission. (d) The conviction that Art. I, § 8, cl. 14, vesting in the Congress the power 'To make Rules for the Government and Regulation of the land and naval Forces,' means, in appropriate areas beyond the purely military offense, more than the mere power to arrest a serviceman-offender and turn him over to the civil authorities. The term 'Regulation' itself implies, for those appropriate cases, the power to try and to punish. (e) The distinct possibility that civil courts, particularly nonfederal courts, will have less than complete interest, concern, and capacity for all the cases that vindicate the military's disciplinary authority within its own community. . . . (f) The very positive implication in *O'Callahan* itself, arising from its emphasis on the absence of service-connected elements there, that the presence of factors such as geographical and military relationships have important contrary significance. (g) The recognition in *O'Callahan* that, historically, a crime against the person of one associated with the post was subject even to the General Article. The comment from Winthrop, . . . Military Law and Precedents 724 (2d ed. 1896, 1920 Reprint):

'Thus such crimes as theft from or robbery of an officer, soldier, post trader, or campfollower * * * inasmuch as they directly affect military relations and prejudice military discipline, may properly be—as they frequently have been—the subject of charges under the present Article. On the other hand, where such crimes are committed upon or against civilians, and not at or near a military camp or post, or in breach or violation of a military duty or order, they are not in general to be regarded as within the description of the Article, but are to be treated as civil rather than military offenses.' (Footnotes omitted).

. . . certainly so indicates . . . .

(h) The misreading and undue restriction of *O'Callahan* if it were interpreted as confining the court-martial to the purely

military offenses that have no counterpart in nonmilitary criminal law. (i) Our inability appropriately and meaningfully to draw any line between a post's strictly military areas and its nonmilitary areas, or between a serviceman-defendant's on-duty and off-duty activities and hours on the post."

In *Relford*, the Supreme Court emphasized that the presence of factors such as geographical and military relationships have important jurisdictional significance. Although the military status of the victim standing alone is not sufficient to establish jurisdiction, it is a factor which must be weighed in the *ad hoc* determination of the jurisdictional issue. The Court of Military Appeals found that the off base offenses of robbery and kidnapping were not service-connected, although the victim was a serviceman and an intent to rob was formulated on base in *United States v. Hedlund, supra.* The victim was an unauthorized absentee whose military identity was apparently unknown to the accused; the accused had formulated no intent to rob servicemen, but merely planned to rob hitchhikers off base. In *United States v. Wilson*, 2 M.J. 24 (1976), the Court found no jurisdiction over the off base offenses of robbery and assault, although the accused knew that the victim whom he had met off base on the evening of the offense was a serviceman. In both *Hedlund* and *Wilson*, the military High Court found that the only connection between the offenses and the military establishment—other than the military status of the accused—was the military status of the victim. In cases of offenses involving abuse of military status, a substantial relationship between the offense and the military duties of the accused or other service members, or a substantial threat to the military community, the Court of Military Appeals has found service connection and jurisdiction over off base offenses. *United States v. Moore, supra*; *United States v. McCarthy*, 2 M.J. 26 (1976).

In *McCarthy*, the Court of Military Appeals had occasion to consider whether off base transfer of three pounds of marijuana

to a fellow serviceman was service-connected. Weighing the *Relford* criteria, the Court found that the following four factors were sufficient to vest a court-martial with jurisdiction.

1. The formation of the criminal intent for the offense on-post.

2. The substantial connection between the defendant's military duties and the crime.

3. The transferee's being engaged in the performance of military duties, known to the defendant, at the time the agreement to transfer was reached.

4. The threat posed to military personnel, and hence the military community itself, by the transfer of a substantial quantity of marihuana to a fellow soldier who was a known drug dealer.

Weighing the *Relford* criteria, we find that appellant's offenses have military significance. The military relationships in this case are significant. Although appellant, his companions, and the victim were members of different companies, all were assigned to the same unit and command, Camp Elmore. They were billeted in the same barracks. The victim and P met while they were assigned to the same working party. In the course of the performance of their duties appellant and P drove buses on base. The victim was their passenger when she rode from her place of work to the barracks. During off duty hours, they socialized in the enlisted club on base, a command sponsored recreational facility. The victim and P had been intimate on base in the BEQ barracks and elsewhere. The victim would not have accompanied appellant and the others to the beach where she was violated but for her association with P which germinated in a military working relationship and ripened into an intimate friendship on base. Appellant and G knew of L's poor reputation for chastity on the base when they accompanied her and P from the club on base in order to party off base. But for the military relationship and acquaintance appellant would have had

no opportunity to rape her. But for his knowledge of her reputation for chastity and sexual activities on base gained through military relationships, it is unlikely that appellant would have raped her. The very nature of military community life places military persons in close and continuing association, contact, and comaraderie with each other. This relationship does not cease at the gates of the base and often extends off base. *United States v. Butler*, 41 C.M.R. 620 (A.C.M.R.1969), at 624. *See United States v. Butts*, 1 M.J. 1073 (N.C.M.R.1976).

Violation of the military interest in protecting the personal security of its members can have an adverse impact upon overall military effectiveness. *See United States v. White*, 1 M.J. 1048 (N.C.M.R.1976). The military has a paramount interest in the protection of the personal security of its members from violent crimes stemming from the military relationship, even though the actual criminal activity occurs off base. *See United States v. Butts, supra.* Unless this interest is vindicated, reasonable community expectations of protection from criminal acts will be frustrated. *Cf. United States v. Sims*, 50 C.M.R. 401 (A.C.M.R. 1975) at 407, *pet. granted*, 50 C.M.R. 903 (C.M.A.1975). Sexual or other assaults by one member of a military unit upon another member of the same unit, when both assailant and victim associate from day to day in their unit or elsewhere, on base, in the course of their working or other military relationships, pose a serious threat to good order and discipline within the unit, even though the assaults occur off base. Military jurisdiction provides a deterrent to such offenses and to the temptation of the victim or his friends to wreak vengeance upon the wrongdoer. *See United States v. White, supra.*

In *Hedlund* and *Wilson, supra*, and *United States v. Tucker*, 1 M.J. 463 (1976), in which the Court of Military Appeals found no court-martial jurisdiction over off base offenses against military victims, there were no on base relationships between the accused and the victims. The factual situation in this case is materially different from those in which off-duty servicemen commit a crime while blended into the general civilian populace.

In view of the significant military relationships in this case, we find that appellant's crimes were service connected and subject to court-martial jurisdiction. The military status of appellant, the victim, and the other Marines involved and their military relationships enabled appellant to commit the crimes. *Cf. United States v. Henderson*, 18 U.S.C.M.A. 601, 40 C.M.R. 313 (1969). The crimes posed a substantial threat to the peace and security of the military unit, community, and base. The military interest in deterring the offenses was distinct from and immeasurably greater than that of the civilian community and could not be adequately vindicated in the civilian courts. Therefore, the offenses were service-connected within the meaning of *O'Callahan* and *Relford* and triable by court-martial.

## IV. Fair Trial

### A. *Limitation of Defense Testimony*

At the request of the prosecution, and over defense objection, the military judge ordered counsel to insure that the witnesses and appellant did not indicate to the court members that the Virginia court had dismissed the rape charges or that various military officers had recommended dismissal of charges. (R. 23). He did not prohibit the defense from questioning witnesses concerning prior inconsistent statements or from eliciting any relevant information.

Appellant characterizes the trial judge's ruling as a "gag order" and claims it prevented the defense from vigorously cross-examining Government witnesses and had a chilling effect on the exercise of appellant's constitutional rights to confront the witnesses and testify in his own behalf. Appellant personally and vigorously protested the ruling in an outburst at an Article 39(a) session. (R. 70). Later, before the appel-

lant took the stand to testify in his own behalf, his civilian defense counsel requested that the military judge advise him of his rights and reiterate his ruling. The judge reluctantly acquiesced when defense counsel insisted. (R. 281, 282). Appellant hesitated when the judge asked him if he intended to obey his order. The judge stated that if appellant violated his ruling he would order him to stop, and have him gagged if he failed to do so. Two military policemen who were not wearing any indication of their status were present in the courtroom to enforce the judge's order, if necessary.

■■■■ The substantial rights of the accused were not prejudiced by the judge's ruling. Inasmuch as appellant complied with the ruling, we do not have to determine whether striking appellant's testimony and physically gagging him would have been prejudicial had he failed to comply and persisted in violating the ruling. Reasonable latitude should be given to the cross-examiner. The extent of cross-examination with respect to a legitimate subject of inquiry is within the discretion of the military judge. *See Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). *Manual for Courts-Martial, United States, 1969* (Revised edition), par. 149b. The judge's ruling did not restrict cross-examination into any proper, legitimate, or relevant subject of inquiry in this case. The civilian magistrate's dismissal of the victim's complaint because of lack of evidence at a preliminary hearing was not a proper, legitimate, or relevant subject of inquiry. Although an accused may testify and call witnesses in his own behalf, defense testimony is subject to the rules of evidence. An accused may not justifiably complain if objections to irrelevant or immaterial testimony are sustained. Appellant's objection to the judge's ruling prohibiting testimony concerning the civilian magistrate's dismissal of the complaint at a preliminary hearing in civilian court and related matters is devoid of merit.

**B. *Trial Counsel Argument on Findings***

■■■■ Appellant now contends that the trial counsel's argument on findings constituted prejudicial error. Citing *United States v. Pettigrew*, 19 U.S.C.M.A. 191, 41 C.M.R. 191 (1976), he complains because trial counsel argued that the accused and all but one of the defense witnesses were lying. In *Pettigrew*, the Court of Military Appeals held that argument of trial counsel characterizing the accused testimony as perjury is error where such argument is unsupported by the evidence. Trial counsel may comment earnestly and forcefully on the evidence as well as on any inferences which are supported reasonably by the testimony. He may strike hard blows but they must be fair. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1374 (1935). If his argument tends to be inflammatory it must be based on matters within the record. *United States v. Doctor*, 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956). The issues, facts and circumstances of the case are the governing factors as to what may be proper or improper. *United States v. Socony-Vacuum*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Although the Court of Military Appeals has not encouraged the use of denunciatory comments, it has held that the trial counsel may call the accused a liar when the description is accurate and supported by the record. *United States v. Doctor, supra. Cf. United States v. Nelson*, 1 M.J. 235 (1975). Trial counsel's characterization of the testimony of appellant and other defense witnesses in argument on findings did not exceed the bounds of fair comment in this case. It is supported by the evidence and reasonable inferences therefrom.

Citing *United States v. Ryan*, 21 U.S.C.M.A. 9, 44 C.M.R. 63 (1976), appellant also contends that trial counsel's argument improperly implied that the greater rank of certain prosecution witnesses imported greater credibility over a defense witness of lesser rank.

■■■ Trial counsel mentioned in his argument that the prosecution witnesses who testified concerning the victim's truth and

veracity came from a variety of ranks. (R. 369, 381). Trial counsel also argued, in effect, that a defense witness must have been mistaken because two noncommissioned officers contradicted her and if the members believed her they would have to believe that the two noncommissioned officers were lying. (R. 369–71). Although an inference of reliability and truthfulness may properly be drawn from the fact that an individual has had such long and dedicated service in an armed force as to merit promotion to a high rank, the inference cannot be elevated to a legal axiom that the degree of rank carries a corresponding degree of credibility and argument implying such is error. *United States v. Ryan, supra.*

 Inasmuch as trial counsel's argument may be construed as importing greater credibility to witnesses of greater rank, it is improper. However, the failure to object in the trial arena where the harmful effects, if any, might be ameliorated by prompt instructions normally raises the doctrine of waiver and precludes an accused from asserting a claim of error on appeal. This principle is not usually applied if the abuse of discretion is so flagrant as to charge the military judge with a duty to stop the argument *sua sponte. United States v. Nelson, supra* at 1 M.J. 238, citing *United States v. Doctor, supra.* The absence of objection tends to indicate that the defense did not regard the prosecutor's argument as egregiously improper and is a persuasive inducement to an appellate court to evaluate the argument in the same light as the defense probably considered it at trial. *United States v. Wood,* 18 U.S. C.M.A. 291, 40 C.M.R. 3 (1969). However, an accused will not be penalized for flagrant oversights of his counsel at trial. *Id.* In *Doctor, supra* at C.M.R. 261 the Court of Military Appeals stated:

" . . . trial defense counsel must have concluded [the remarks of trial counsel] were not so grossly improper as counsel did not so much as object to any of the remarks. It is a little difficult for us to find misconduct which compels a reversal when it purportedly arises out of

an argument which had so little impact on defense counsel that they sat silently by and failed to mention it to the appropriate court-martial official at the time of trial."

In *Ryan, supra,* the military High Court declined to apply the doctrine of waiver and found that trial counsel's argument was so pernicious and presented so strong a risk of prejudice as to have required the trial judge to stop it and instruct the court members to disregard it. Although the Court in that case emphasized that part of trial counsel's argument which stressed that greater rank imports greater credibility, it also noted that his assertions of personal opinion were clearly unwarranted and nothing in the record justified certain other aspects of his arguments.

Under the circumstances of this case, trial counsel's argument was not so flagrant as to trigger the military judge's legal obligation to act *sua sponte.* We conclude that appellant has not been prejudiced by trial counsel's argument on findings.

### C. *Allegations of Prosecutorial Misconduct*

 Appellant claims that he was prejudiced by prosecutorial misconduct. Having examined his allegations we find no prejudice. Appellant was not prejudiced by trial counsel's attempt to impeach him by use of a juvenile offense because the military judge did not permit trial counsel to do so and gave a cautionary instruction. (R. 299). Careful examination of the record does not support appellate defense counsel's allegation that the prosecutor improperly attempted to influence the testimony of two witnesses. After the issue was litigated at trial, the military judge who had the opportunity to see and hear the witness concluded that there was no indication of misconduct by counsel. (R. 193). Although the testimony relates to charges of which the accused has been acquitted, in view of the nature of the allegations we have independently weighed the allegations and find that trial counsel merely attempted to have a witness of doubtful credibility tell the

truth in a coherent manner. Trial counsel was not involved in alleged attempts to influence the testimony of defense witnesses, P and G. The alleged attempts of others were patently unsuccessful. We do not find that appellant has been prejudiced by prosecutorial misconduct.

The fourth assignment of error lacks merit.

## V. Sufficiency of Evidence

In his fifth assignment of error, appellant contends that the evidence of record is insufficient to establish his guilt beyond a reasonable doubt because the lack of a fresh complaint renders the evidence insufficient to convict and the victim's testimony is unworthy of belief.

 In a prosecution for a sexual offense in which the alleged victim has testified that consent was lacking, evidence that the alleged victim made a complaint of the offense within a reasonable time after its commission is admissible for the purpose of corroborating the testimony of the victim. Evidence of failure to make a complaint is admissible on the question of the credibility of the testimony of the victim, generally, and on the question as to whether or not there was consent. *Manual for Courts-Martial, United States, 1969* (Revised edition), par. 142c. The extent to which failure to complain promptly should discredit the victim depends on the circumstances of the case and the reasons for her failure. *United States v. Flippen,* 16 U.S.C.M.A. 622, 37 C.M.R. 242 (1967). Delay does not render the victim's testimony incredible as a matter of law. However, a conviction cannot be based upon uncorroborated testimony given by an alleged victim in a trial for a sexual offense, if the testimony is self-contradictory, uncertain, or improbable. *Manual, supra,* par. 153a. A woman's prior lack of chastity is not a defense to a charge of rape. *Manual,* par. 199a. Even a prostitute may be raped. The fact that the victim may have been unchaste does not necessarily establish consent or deprive her testimony of evidential worth. *United States v. Washington,* 2 U.S.C.M.A. 177, 7 C.M.R. 53

(1953). It is conceivable that she might not consent on all occasions and quite possible that she might wish to deny her favors to some who might demand them. The sufficiency of the evidence is determined in the light of the totality of the circumstances presented by the record. *United States v. Henderson,* 4 U.S.C.M.A. 268, 15 C.M.R. 268 (1954).

 In the case *sub judice,* the victim did not mention the crimes until the late afternoon of 18 June 1975, about 17 hours after they occurred, in response to repeated questions about bruises on her arms and face. She did not report them to the authorities until the following morning. She testified that she did not report the offenses because of her impending transfer orders to an activity a short distance from her home. (R. 91). Her hesitation is understandable in view of her previous relationship with P and appellant's statement to P and G in her presence as they drove back to the barracks, "If she says anything about this—we got our story together, she wanted to do it for all three of us. She's a dog anyway." (R. 90).

The victim's testimony was neither self-contradictory, uncertain, improbable, nor uncorroborated. The testimony of appellant, P and G was self-contradictory and improbable. Recognizing that the triers of fact saw and heard the witnesses, we have independently evaluated the evidence and find that the evidence is sufficient to establish appellant's guilt beyond a reasonable doubt.

## VI. Sentencing Argument

Appellant submits in his sixth assignment of error that trial counsel's argument on sentence urged general deterrence.

In *United States v. Mosely,* 1 M.J. 350 (1976), the Court of Military Appeals condemned the use of the concept of general deterrence in a way that allows an accused to be punished more severely than he justly deserves and held improper the mention by trial counsel in sentencing argument of deterrence of others as a

factor to be considered in arriving at an appropriate sentence.

Trial counsel's opening argument on sentence was proper. Subsequently in his remarks, defense counsel raised the issue of general deterrence by arguing that confinement would not deter certain named Marines and other recruits of poor quality and also argued that a lenient sentence was appropriate because the victim had been previously unchaste.

■■■ Matters which are not ordinarily the subject of proper comment may become relevant if they are raised by the defense. A prosecutor's reply to arguments of defense may become proper even though had the argument not been made the subject of the reply would have been objectionable. *United States v. Doctor, supra.*

■■■ In this case, although trial counsel did answer the defense general deterrence argument, his reply did not stress general deterrence but emphasized that the victim was entitled to the protection of law, even though she had previously been unchaste. The thrust of the reply of trial counsel, who equated lack of chastity with a moral or religious belief, was that those who do not share the moral tenets of the majority, are nevertheless entitled to the protection of the law. Under the circumstances of this case, we do not find the portion of trial counsel's reply which touched upon general deterrence to be prejudicial error because defense counsel opened the door by arguing general deterrence. We also note that trial counsel's reply mainly was devoted to the quality of justice, rather than general deterrence. In reply to the defense contention that the offense was not so serious as to warrant confinement because the victim had been previously unchaste, trial counsel argued for a just sentence reflecting society's concern over the seriousness of the offenses. Society has an interest in knowing that a particular sentence is just in order that its members may have trust and confidence in our system of justice. "The impact of a particular sentence . . . is whether the public perceives the sentence as just or

unjust. That impact is different in character and consequence from adding punishment in order to deter others." *United States v. Mosely, supra*, at 1 M.J. 351. Although an argument for a just sentence does not violate the *Mosely* principle, nevertheless, an individual may not be punished more severely than he justly deserves in order to enhance the community's perception of the sentence as just. Each accused must be given individualized consideration, *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 27 C.M.R. 176 (1959).

We do not construe trial counsel's argument as an invitation to the court members to deprive appellant of the individualized consideration to which he was entitled and impose a more severe sentence than he justly deserved on the basis of the record, in order that society might view the sentence as just. In context, his remarks are an argument for a just and adequate sentence based on the seriousness of the offenses. The maximum sentence imposable included confinement at hard labor for life. The members ignored trial counsel's request to award confinement for 15 years and adjudged confinement for 4 years. The convening authority reduced the dishonorable discharge to a bad conduct discharge. We find no fair risk that any impropriety in trial counsel's argument resulted in a more severe sentence than appellant would otherwise have received. The sixth assignment of error lacks merit.

## VII. Multiplicity

■■■ Appellant's seventh assignment of error, alleging instructional error on multiplicity for sentencing purposes, is apparently based on his failure to note that the specifications under Charge V had been renumbered. (R. 72, 212, 213). Contrary to appellant's assertions, the military judge instructed the court members that both specifications alleging communication of threats were multiplicious with rape. (R. 414). He also correctly advised the members that the specification alleging an indecent assault was a separate offense. *See United States*

*v. Burns*, 25 C.M.R. 791 (A.F.B.R.1957), *pet. den., sub nom.; United States v. Harrington*, 25 C.M.R. 486 (U.S.C.M.A.1958); *United States v. Doyle*, 17 C.M.R. 615 (A.F.B.R. 1954), *pet. den., sub nom.; United States v. Gaskey*, 17 C.M.R. 381 (U.S.C.M.A.1954). Appellant committed the indecent assault upon the victim after he had raped her and after P had approached her, while G was attempting intercourse with her. So long as there are separate offenses charged and found, regardless of the fact that they may arise out of the same transaction, sentence may be imposed for each offense. *United States v. Burney*, 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971). A single integrated transaction is not synonymous with a single intent or impulse. *Id.* Appellant entertained more than one intent. He could have terminated his course of criminal conduct after he raped the victim, but before he committed the indecent assault upon her. The rape and subsequent indecent assault are separate offenses for punishment purposes.

### VIII. Role of Members

■ When trial counsel had finished his closing argument on sentence the military judge advised the court members: "Gentlemen, with Trial Counsel's recommendations to you as to sentence he alluded to you (sic) the government's position of course, he is the prosecutor, the government has no position. In fact you are the government for that purpose." Appellant now complains that the military judge essentially divested the court members of their role as the impartial sentencing authority and implied that they were to act on behalf of the Government, who prosecuted the case, in adjudging a sentence. The judge's remarks may be fairly construed as a reminder to the members that they were the sole sentencing authority with the independent responsibility to adjudge an appropriate sentence without regard to the views of the prosecutor. We find no prejudice. The assignment of error lacks merit.

### IX. Appropriateness of Sentence

■ In his final assignment of error appellant argues that his sentence is inappro-priately severe because of the disparity between the approved sentences for appellant and the coactors who were tried separately after appellant. P pleaded guilty to indecent assault and G to commission of a lewd and lascivious act. In both cases the bad conduct discharges, forfeitures and confinement in excess of 6 months were probationally suspended in accordance with pretrial agreements. In his post-trial request for clemency based on the disparity in sentences, defense counsel conceded that appellant's culpability was shown by the evidence to be greater than that of either of his coactors. Appellant, who weighed 215 or 220 pounds and was a former amateur boxer, initiated the crimes. Knocking down the victim and repeatedly slapping her in order to stop her from screaming, he administered a savage beating, removed her clothes, and raped her. Then he urged P to approach her. P attempted certain acts but was unable to achieve an erection. Then appellant encouraged G to criminal conduct although G was reluctant to do so. While G was attempting intercourse with the victim, appellant committed an indecent assault upon her. G heard a noise and interrupted the proceedings. Appellant wished to leave the victim on the beach and then threw her into the water to revive her. When she had regained consciousness and dressed, he again repeatedly slapped her in order to hasten her pace. Appellant was the primary actor in this sordid drama.

The understandable disparity in sentences has resulted in no injustice to appellant. His savage crimes warrant stern punishment. The maximum sentence for the crimes of which he stands convicted includes confinement at hard labor for life. His approved sentence which includes a bad conduct discharge and confinement for 4 years is not inappropriately severe. The ninth assignment of error lacks merit.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Senior Judge NEWTON and Judge CRANDELL concur.