UNITED STATES, Appellee,

v.

Mark G. HEDLUND, Private, U.S. Marine Corps, Appellant.

No. 31,239.
NCM 75–1083.

U. S. Court of Military Appeals.

Sept. 17, 1976.

---

*Lieutenant Robert R. Sparks, Jr.,* JAGC, USNR, argued the cause for Appellant, Accused.

*Captain W. D. Blalock,* USMCR, argued the cause for Appellee, United States. With him on the briefs were *Lieutenant Colonel P. N. Kress,* USMC, and *Lieutenant Thomas L. Earp,* JAGC, USNR.

Opinion of the Court

PERRY, Judge:

On his plea of guilty, the appellant, a member of the Marine Corps stationed at Marine Corps Supply Center, Barstow, California, was convicted of conspiracy to rob, robbery, and kidnapping, in violation of Articles 81, 122, and 134, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 922, and 934. Thereupon, the appellant was sentenced to dishonorable discharge, confinement at hard labor for 7 years, and forfeiture of all pay and allowances. The convening authority approved the findings, but modified the sentence to one of a bad-conduct discharge, confinement at hard labor for 7 years, and total forfeitures, and, additionally, suspended those portions of the sentence extending to confinement and forfeitures in excess of 22 months. The Navy Court of Military Review affirmed both the findings and the sentence as approved by the convening authority.

The facts of record are that, on the evening of January 7, 1975, the appellant, Privates Reed and Lynch, and Lynch's wife, formulated an agreement on the Marine base to go into town and rob someone for beer money. Before leaving the base, the appellant and his companions armed themselves with iron pipes and forks fashioned to fit around the fist with the tines pointed outward. They all then left the base in Reed's car and drove to Barstow; all three Marines were on properly authorized liberty from their commands at the time.

On the East Main Street ramp to Interstate 15 in Barstow, the group picked up Marine Corps Private First Class William A. Beck and Mike Martinson, a civilian friend of Beck's, who were hitchhiking. At the time, Beck was an unauthorized absentee from his unit at Camp Pendleton, California, and had been such since December 26, 1974; he apparently was on his way to Nebraska at the time of the incident. However, Beck's military status was unknown to the appellant and his compatriots, and theirs to him. With Mrs. Lynch driving, the car headed to a dirt road in the North Barstow area, where Beck was beaten with an iron pipe and robbed of $80, a gold bracelet, and his jacket. Leaving their

victims alone in a field, the appellant and his fellow conspirators fled in the car and were arrested, pursuant to Martinson's report of the robbery to the local sheriff and while they were still in possession of the property stolen from Beck, by civilian authorities near the main gate to the Marine Corps Supply Center. The assailants were identified as such by their two victims. The civilian authorities held the appellant in confinement for approximately 2 weeks and then released him to the custody of the military.

The appellant complains to this Court that the court-martial lacked jurisdiction to try him of the offenses of which he was convicted in that none of them were, under the facts of the case, "service connected" within the meaning of *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The Government, on the other hand, urges that the Supreme Court, in its opinion in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), impliedly indicated that the service-connection standard of *O'Callahan* is met when the victim of the offenses, as in the present case, is a serviceperson. Indeed, the bulk of this Court's precedent is in accord with what the Government now urges as, virtually, automatic court-martial jurisdiction in such instances, regardless of all other factual circumstances.[1]

We disagree with the Government's contention. Indeed, *Relford* instructs otherwise. *See United States v. Moore*, 1 M.J. 448 (1976). Additionally, we believe that application of the *O'Callahan* standard, through the criteria enunciated in *Relford*, compels a conclusion of no court-martial jurisdiction over the robbery and kidnapping offenses,

but that jurisdiction did lie properly in the court-martial to try the conspiracy allegation.

## I

A careful reading of *Relford* is necessary for an appreciation and understanding of the approach the Court was setting out for applying the *O'Callahan* standard. An isolation of a single passage will not suffice to this end.

Preliminarily, and of some import, it must be remembered that the Supreme Court, early in its unanimous opinion authored by Justice Blackmun, noted that it was not reconsidering the 5–3 decision of the Court in *O'Callahan*, but rather it was only applying it.[2] In so limiting the parameters of the task before it, and in twice emphasizing that *O'Callahan* prescribed an *ad hoc* approach to service connection,[3] the Court's discussion of the facts of that case and the law on the issue is given meaningful direction.

After quoting a lengthy passage from Justice Douglas' majority opinion in *O'Callahan*, the *Relford* Court extracted therefrom the oft-cited 12 criteria by which service connection may be measured:[4]

> We stress seriatim what is thus emphasized in the holding:
> 1. The serviceman's proper absence from the base.
> 2. The crime's commission away from the base.
> 3. Its commission at a place not under military control.
> 4. Its commission within our territorial limits and not in an occupied zone of a foreign country.
> 5. Its commission in peacetime and its being unrelated to authority stemming from the war power.

1. *See, e. g., United States v. Everson*, 19 U.S.C.M.A. 70, 41 C.M.R. 70 (1969); *United States v. Huff*, 19 U.S.C.M.A. 56, 41 C.M.R. 56 (1969); *United States v. Nichols*, 19 U.S.C.M.A. 43, 41 C.M.R. 43 (1969); *United States v. Plamondon*, 19 U.S.C.M.A. 22, 41 C.M.R. 22 (1969); *United States v. Cook*, 19 U.S.C.M.A. 13, 41 C.M.R. 13 (1969); *United States v. Comacho*, 19 U.S.C.M.A. 11, 41 C.M.R. 11 (1969); *United States v. Rego*, 19 U.S.C.M.A. 9, 41 C.M.R. 9 (1969), all

predating *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

2. *Relford v. Commandant, supra* at 359, 91 S.Ct. 649.

3. *Relford v. Commandant, supra* at 365–66 and at 369, 91 S.Ct. 649.

4. *Relford v. Commandant, supra* at 365, 91 S.Ct. at 655.

**14**

6. The absence of any connection between the defendant's military duties and the crime.

7. The victim's not being engaged in the performance of any duty relating to the military.

8. The presence and availability of a civilian court in which the case can be prosecuted.

9. The absence of any flouting of military authority.

10. The absence of any threat to a military post.

11. The absence of any violation of military property.

One might add still another factor implicit in the others.

12. The offense's being among those traditionally prosecuted in civilian courts.

Thereafter, the Court applied the circumstances surrounding Relford's criminal transgressions against these 12 factors. Acknowledging that perhaps as many as seven of those present in *O'Callahan* also were present in *Relford*, the Court found that the five which were not dictated a contrary conclusion of service connection under the facts of that case. In rejecting Relford's legally restrictive argument that "service connection" demands that the crime itself be military in nature, "that is, one involving a level of conduct required only of servicemen and, because of the special needs of the military, one demanding military disciplinary action,"[5] the Court stressed nine considerations,[6] only *one* of which was the historical view that a crime against a fellow serviceperson was subject to court-martial jurisdiction. It was only in light of the 12 criteria quoted earlier and upon reflection of all 9 of these considerations that the Court stated:[7]

This leads us to hold, and we do so hold, that when a serviceman is charged with an offense committed within or at the

*geographical boundary of a military post* and violative of the security of a person or of property there, that offense may be tried by a court-martial. Expressing it another way: a serviceman's crime against the person of an individual *upon the base* or against property *on the base* is "service connected," within the meaning of that requirement as specified in *O'Callahan*, 395 U.S. at 272, [89 S.Ct. 1683].

■ Thus, we conclude that there is no support in the *Relford* opinion for concluding, simply because the Supreme Court held as always service connected an offense committed by a member of the military community against a person (military or civilian) within or at the geographical boundary of a post or against property on the base, that the Court implicitly sanctioned jurisdiction predicated solely upon the military status of both the wrongdoer and the victim. *See United States v. Moore, supra*, 1 M.J. at 450. While the Court's holding that court-martial jurisdiction may be founded upon geography was clear and was predicated upon application of the 12 criteria which were articulated, neither can be said of the contention that such jurisdiction may be found solely upon military status of the victim. As we held in *Moore*:[8]

What *Relford* makes clear is the need for a detailed, thorough analysis of the jurisdictional criteria enunciated to resolve the service-connection issue in all cases tried by court-martial. A more simplistic formula, while perhaps desirable, was not deemed constitutionally appropriate by the Supreme Court. It no longer is within our province to formulate such a test.

**II**

■ Like the Supreme Court majority in *O'Callahan*, our view of the facts of this case reveals the presence of all 12 factors

---

5. *Relford v. Commandant, supra* at 363, 91 S.Ct. at 654.

6. *Relford v. Commandant, supra* at 367–69, 91 S.Ct. 649.

7. *Relford v. Commandant, supra* at 369, 91 S.Ct. at 657 (emphasis added).

8. *United States v. Moore*, 1 M.J. 448 (1976).

leading to a determination of non-service connection over the robbery and kidnapping offenses: (1) The appellant was properly away from his installation; (2) Those crimes were committed away from the post; (3) They were committed in a place not under military control; (4) They occurred in California, a place within our territorial limits and not in an occupied zone of a foreign country; (5) They took place in time of peace and had no relation to the war-making power; (6) The crimes were unrelated to the appellant's military duties; (7) The victim at the time of the offenses was not engaged in the performance of any military-related duty; (8) Civilian courts were present and available to try these offenses; (9) The crimes were unrelated to military authority and involved no flouting thereof; (10) The offenses involved no threat to the military post; (11) There was no violation of military property; and (12) The offenses—robbery and kidnapping—are among those traditionally prosecuted in civilian courts and are not peculiarly military in nature.

Indeed, the only connection whatsoever in this case between the military and these two charges of concern, other than the military status of the appellant, was the military status of the victim. Under certain unusual circumstances, this factor alone might be enough to cause such a high degree of military interest and concern as to compel jurisdiction in the military to try the accused. However, in most instances, including the one now before us, that is not the case. In fact, we believe that the degree of interest by the military in this AWOL Marine is de minimis and, alone, will not result in "service connection" as that term has come to be known.

However, as the conspiracy was formulated on post, and as the gathering of weapons—a step toward effecting the object of that conspiracy—occurred on post, the court-martial did possess jurisdiction to try the conspiracy charge. *See Relford v. Commandant, supra* at 369, 91 S.Ct. 649.

The decision of the United States Navy Court of Military Review is reversed. The findings as to Charges II and III are set aside and the same are dismissed. The record is returned to the Judge Advocate General for remand to the Court of Military Review for action on the sentence in accordance with this decision.

Chief Judge FLETCHER concurs.

COOK, Judge (dissenting):

I disagree with the majority for two reasons. First, the acts of the accused in preparation for the crimes he perpetrated in the civilian community so affected the integrity of the military installation as to provide an adequate basis for the exercise of court-martial jurisdiction, especially in view of the "less than complete interest" in prosecution of the offenses that was manifested by the civilian authorities. *Relford v. Commandant,* 401 U.S. 355, 368, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). Secondly, neither *O'Callahan v. Parker* [1] nor *Relford* involved a victim who was a member of the military. As I read those cases, the Court regarded that circumstance as so unique as to exclude it from the enumeration of the factors relevant to an offense against a civilian and to give it special mention.

In *Relford,* the Supreme Court acknowledged that "historically, a crime against the person of one associated" with a military post was triable by court-martial. 401 U.S. at 368, 91 S.Ct. at 657. To explain the statement and its relationship to the other criteria for the exercise of military jurisdiction that had been extrapolated from its *O'Callahan* opinion, the Court referred, as it had in *O'Callahan,* to a statement in the authoritative text on military law by Colonel William Winthrop, Military Law and Precedents, 2d ed., 1920 Reprint.[2]

1. 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

2. The extract quoted in the *O'Callahan* opinion is as follows:

A crime, therefore, to be cognizable by a court-martial under this Article, must have been committed under such circumstances as to have directly offended against the government and discipline of the military state.

Colonel Winthrop differentiates between an offense by a member of the military in violation of military law in which the victim is also a service person and an offense in which the victim is a civilian. As to the latter, Colonel Winthrop points out that the offense is triable by court-martial only if it was committed "at or near" a military post. However, when the victim of the violation of military law is a member of the military, his status, not geography, invests the offense with military significance. When both culprit and victim are members of the military community, the offense "directly affect[s] military relations and prejudice[s] military discipline." [3]

In utilizing Colonel Winthrop's historical analysis to redefine the service significance of the place of the commission of the offense, I believe the Supreme Court concomitantly approved his analysis of the impact of military relationships. Consequently, in concluding that an offense by a member of the military against a civilian "committed within or at the geographical boundary of a military post" was triable by court-martial, without regard to the presence or absence of other factors appropriate for consideration in determining the military cognizability of the offense,[4] I believe the Supreme Court implicitly sanctioned jurisdiction predicated solely upon the military status of both the wrongdoer and the victim. Accordingly, I would adhere to this Court's statement in *United States v. Everson*, 19 U.S.C.M.A. 70, 71, 41 C.M.R. 70, 71 (1969), that an offense perpetrated against another serviceperson "regardless of the circumstances . . . is cognizable by court-martial," and iterate that as to an offense against a member of the armed forces, court-martial jurisdiction exists whether the offense is committed on or off base, and without regard to other circumstances, such as whether the accused knows, at the time of the offense, that the victim is a member of the service.

I would affirm the decision of the United States Navy Court of Military Review.

---

Thus such crimes as theft from or robbery of an officer, soldier, post trader, or camp-follower; forgery of the name of an officer, and manslaughter, assault with intent to kill, mayhem, or battery, committed upon a military person; inasmuch as they directly affect military relations and prejudice military discipline, may properly be—as they frequently have been—the subject of charges under the present Article. On the other hand, where such crimes are committed upon or against *civilians*, and not at or near a military camp or post, or in breach or violation of a military duty or order, they are not in general to be regarded as within the description of the Article, but are to be treated as civil rather than military offenses.

395 U.S. at 274 n. 19, 89 S.Ct. at 1691.

3. *Id.*

4. 401 U.S. at 368–69, 91 S.Ct. at 657.