UNITED STATES

v.

Airman Basic George E. WREN, FR 509–78–0290 United States Air Force.

ACM 22453.

U. S. Air Force Court of Military Review.

Sentence Adjudged 6 Oct. 1978.

Decided 30 May 1979.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Lieutenant Colonel Larry G. Stephens.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Lieutenant Colonel William H. Seckinger, USAFR.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

DECISION

HERMAN, Judge:

Before a military judge sitting as a general court-martial, the accused was convicted of three unauthorized absences from duty, two thefts, two wrongful appropriations and two forgeries, in violation of Articles 86, 121, and 123, respectively, of the Uniform Code of Military Justice, 10 U.S.C. §§ 886, 921, 923. He was sentenced to a bad conduct discharge, confinement at hard labor for ten months and forfeiture of $100.00 per month for a like period.

The assignments of error raised by the accused in his request for appellate defense counsel are without merit and have been adequately discussed in the review of the staff judge advocate. Appellate defense counsel have further alleged that the offense of wrongful appropriation of a motor vehicle charged in Specification 1, Charge II was not properly triable by court-martial.

The evidence establishes that the accused and Airman Kepler, the owner of the vehicle wrongfully appropriated, resided in adjacent, on base dormitory rooms. The accused had borrowed the vehicle, with permission, on two other occasions. On the date in question, Saturday, June 10, the accused again asked to borrow the car so that he could drive it off base to "finalize a loan". Kepler offered to drive the accused into town, but the latter told him that his appointment was between one and three that afternoon, the precise hours when Kepler was to be in class. At that juncture, according to Kepler, "I told Airman Wren he could borrow the car to go down and finalize the loan and to make sure he was back by the time I was released from train-

ing so him and I could go to my home."[1] The accused acknowledged this, according to Kepler, by saying he would be back in "plenty of time."

When Kepler was released from class, he did not see his car in the parking lot. He went to his dormitory where he eventually found a note signed "CQ" which stated that his car was stalled downtown. Kepler and a friend drove up and down the street indicated on the note four or five times without seeing his car. He next saw the car at Bud's Wrecker Service, Junction City, Kansas where he traveled after he was notified that it had been brought there two days after he gave it to the accused.

No direct evidence of the accused's intent to wrongfully appropriate the vehicle was placed before the court. Appellate defense counsel contend that in the absence of evidence that the intent to wrongfully appropriate was formulated on the installation, the exercise of military jurisdiction was improper, citing the recent United States Court of Military Appeals case of *United States v. McCollum*, 6 M.J. 224 (C.M.A. 1979). That case reiterated earlier holdings that while a charge of conspiracy formulated on a military installation was properly triable by court-martial, the substantive offense committed off base was not. This case, however, differs substantially from *McCollum*, as there was no conspiracy between Kepler and the accused to commit any crime whatsoever.

In *United States v. Moore*, 1 M.J. 448 at 449–50 (C.M.A.1976), Chief Judge Fletcher reviewed the landmark decision in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), concluding that

1. Kepler and the accused had agreed earlier that week that they would drive to Kepler's home in Nebraska on the weekend.

2. Compare *United States v. Whatley*, 5 M.J. 39 (C.M.A.1978).

3. We disagree with the interpretation of the facts by our dissenting brother, as to the following factors enunciated in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971): 2) no direct evidence was before the court-martial that the intent to wrongfully appropriate was formed *either* on or off the base; some suggestion that the intent was formed on base can be inferred from the ac-

What *Relford* makes clear is the need for a detailed, thorough analysis of the jurisdictional criteria enunciated to resolve the service-connection issue in all cases tried by court-martial. A more simplistic formula, while perhaps desirable, was not deemed constitutionally appropriate by the Supreme Court. It no longer is within our province to formulate such a test.

An analysis of the facts of the case before us reveals that a bailment contract was formulated on the installation, the terms of which included a duty imposed upon the bailee, the accused, that he would return the vehicle to the base and its owner. In addition, Kepler, the owner, was quartered on the base; therefore, the normal location for the car was on the installation, with the resultant consequences this has for military registration, control, and liability insurance. Air Force Regulation 125–14 Motor Vehicle Traffic Supervision Ch. 3 (1 Aug. 1973). Finally, the accused and the owner became acquainted as a result of their military duties and quartering, which developed Kepler's trust of the accused to the extent that he was willing to lend him his vehicle.[2]

Under these circumstances, the precise situs of the formulation of the intent by the accused to wrongfully appropriate the vehicle is not as significant as it might be, for example, where both accused and victim reside off the installation and the bailment was formed off base. Justice Blackmun, in *Relford*, supra, wrote, in addition to the well known dozen factors[3] to test service connection:

cused's need of the car for an appointment which coincided precisely with the victim's class; however, we do not rely on such an inference, but in the absence of substantial evidence of where the intent was formed, we place somewhat more emphasis on other factors; 3) while the place where the intent was formed is in question, the car was removed from a place under military control; 6) although the crime was unrelated to the accused's military duties, the bailment was necessary because the victim's military duties prevented him from driving the accused where he desired to go off base; further, the accused went into an absent without leave status after

We stress: (a) The essential and obvious interest of the military in the security of persons and of property on the military enclave. . . . (b) The responsibility of the military commander for maintenance of order in his command and his authority to maintain that order. . . (c) The impact and adverse effect that a crime committed against a person or property on a military base, thus violating the base's very security, has upon morale, discipline, reputation and integrity of the base itself, upon its personnel and upon the military operation and the military mission. . . . (e) The distinct possibility that civil courts, particularly nonfederal courts, will have less than complete interest, concern, and capacity for all the cases that vindicate the military's disciplinary authority within its own community.

401 U.S. at 367, 91 S.Ct. at 656.

It is obvious that the interest and concern of the military commander in this victim, his property, the bailment contract and the accused are far greater than that of the civilian community.[4] The offense touches the maintenance of order on the base, and affects the "morale, discipline, reputation and integrity of the base itself." For these reasons, we find a very substantial service connection and that the exercise of jurisdiction over this offense was entirely proper.

The findings of guilty and the sentence are correct in law and fact and are

AFFIRMED.

EARLY, Chief Judge and ORSER, Judge, concur.

driving the wrongfully appropriated vehicle to Kansas; 7) the victim was engaged in military training at the time the offense took place; 10) the threat to the military post exists in the violation of property owned by another military individual, bailed on and to be returned to the military installation which was the station of the accused, the victim, and the normal situs of the property.

ARROWOOD, Judge (dissenting in part and concurring in part):

In applying the criteria established in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102, 657 (1971) to the evidence in this case, I do not find the service connection necessary for the exercise of court-martial jurisdiction. Therefore, I would set aside the findings of guilty to the Specification of Charge II, order it dismissed, and reassess the sentence based on the remaining findings of guilty.

[W]hen a serviceman is charged with an offense committed within . . . a military post and violative of the security of a person or of the property there, that offense may be tried by court-martial. Expressing it another way: a serviceman's crime against the person of an individual upon the base or against property on the base is "service connected"

. . .

*Relford v. Commandant*, supra, at 369, 91 S.Ct. at 657. In order to establish military jurisdiction on this basis, the government must not only plead but also prove that the offense took place on the military base. *United States v. Alef*, 3 M.J. 414 (C.M.A. 1977). In proving wrongful appropriation, the intent to temporarily deprive the owner of the property as well as the taking or withholding of the property must be established. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 200b. When property is wrongfully appropriated by an individual who had lawful possession of that property, the offense is not committed until the intent to temporarily deprive the owner of property is formed. See, Manual, supra, paragraph 200a(6) and 200b.

4. Justice Blackmun, in *Relford*, supra note 3, 401 U.S. at 366, 91 S.Ct. at 656, also considered significant the status of the victims and their activities just prior to the commission of the offense—the first victim was the sister of a serviceman stationed and quartered on the base, and the second was a serviceman's wife living on the base and returning to her place of employment at the PX from a short, approved break, thus, "engaged in the performance of a duty relating to the military."

The evidence in this case clearly shows that the accused, with permission of the owner, obtained possession of the car on the military base. The reason he gave for needing the car is plausible, and there is no evidence which would indicate it was untrue. The accused had permission to take the car off the base, and there is nothing in the record to reflect that he did not take it off the base under that authorization. Since there is no direct evidence or circumstances from which to infer that the intent required was formed by the accused while on the military base, the situs of the offense cannot be used as the basis for service connection. *United States v. Lundberg*, 5 M.J. 776 (A.C.M.R.1978); *United States v. Jessie*, 5 M.J. 573 (A.C.M.R.1978).

The test for service cognizability of an off-base offense is an examination of all the facts and circumstances according to the criteria set out in *Relford v. Commandant*, supra. *United States v. Alef*, supra, *United States v. Williams*, 2 M.J. 81 (C.M.A.1976); *United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976); *United States v. Hedlund*, 2 M.J. 11 (C.M.A.1976); *United States v. Moore*, 1 M.J. 448 (C.M.A.1976).

My examination of this case in light of the *Relford* criteria reveals the presence of all twelve factors leading to a determination of non-service connection. (1) The accused's absence from the base was proper. (2) There is no evidence to establish that the offense was committed on base, although the accused took rightful possession of the car on the base; (3) There is no evidence that the car was wrongfully appropriated at a place under military control; (4) The offense occurred in Wyoming, a place within our territorial limits; (5) It took place in time of peace and had no relation to the warmaking power; (6) The crime was unrelated to military duties; (7) The victim is in the military and at the time of the offense was engaged in the performance of military related duty, however, the offense was not against his person, but his property; (8) Civilian courts were present and available to try the offense; (9) The offense was unrelated to military authority and involved no flouting thereof; (10) The

offense involved no threat to the military post as would be involved if the accused had wrongfully taken the car from the base; (11) There is no violation of military property; (12) The offense of wrongful appropriation of a car is traditionally prosecuted in civilian courts and is not peculiarly military in nature.

The facts the majority relied on to permit the military jurisdiction, the victim's military status and the accused's rightful taking of the car from its normal location on the military installation do not meet any of the *Relford* criteria. It is well established that the military status of a victim is insufficient to vest jurisdiction in the military. *United States v. Wilson*, 2 M.J. 24 (C.M.A. 1976); *United States v. Alef* and *United States v. Hedlund*, both supra. The second factor, that the accused took legal possession of the car on the installation has not been addressed directly by the United States Court of Military Appeals, however, they have considered similar situations.

In *United States v. Hedlund*, supra and *United States v. McCollum*, 6 M.J. 224 (C.M.A.1979), a conspiracy to commit the offense in question occurred on base. The Court found jurisdiction as to the conspiracy, but held the subsequent offense which occurred off the base to have insufficient service connection to vest the military with jurisdiction.

In *United States v. Sims*, 2 M.J. 109 (C.M.A.1977), the accused purchased from a fellow soldier on post two money orders knowing they had been stolen from another soldier on post. He subsequently cashed them at a liquor store off post. The Court found that in this situation all twelve *Relford* factors led to a determination of non-service connection of the forgery offenses. They found specifically that the off base offense did not pose a threat to the military post as the receipt of the stolen money orders had done.

In *Sims*, the Court gave no weight to the fact that the forgery victim was in the military or that the property involved in the forgery was stolen on a military installa-

tion. In light of this decision, I cannot find that a lawful act involving the obtaining and removal of property from the base could confer military jurisdiction for the subsequent wrongful appropriation of that property. I simply do not believe that the factors relied on by the majority, either considered alone or in conjunction with all the circumstances in this case, are sufficient to establish the service connection necessary for the exercise of court-martial jurisdiction. *United States v. McCollum, United States v. Sims* and *United States v. Hedlund*, all supra.