**UNITED STATES**

v.

**Senior Airman Steven M. LAMPANI, FR 370–70–6863 United States Air Force.**

**ACM 22877.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 17 April 1980.

Decided 1 May 1981.

Appellate Counsel for the Accused: Colonel Larry G. Stephens, Colonel George R. Stevens, Captain Willard K. Lockwood and Captain Neil S. Richman, USAFR.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before EARLY, MILES and KASTL, Appellate Military Judges.

**DECISION**

MILES, Judge:

In this case, we affirm despite defense claims that the court-martial lacked jurisdiction because the offenses of which the accused was ultimately convicted occurred mostly off base.

The accused was originally charged with conspiracy and larceny in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921. One week later, he was additionally charged with being an accessory after the fact to larceny and receiving stolen property, violations of Articles 78 and 134, Code, 10 U.S.C. §§ 878, 934, *supra*. As recognized at trial, the two sets of charges were based on mutually exclusive criminal liability theories. All offenses involved a single item of property. A court-martial panel acquitted on the original charges and convicted the accused of the additional charges. The approved sentence extends to a bad conduct discharge, confinement at hard labor for twelve months, forfeiture of $299.00 per month for twelve months and reduction to airman basic.

The case arose on these undisputed facts: On 13 June 1979, a Yamaha motorcycle, valued at $1800 and belonging to an airman, was stolen from a barrack's parking lot on Bergstrom AFB, Texas. The thief or thieves took the motorcycle to the accused's off base residence. Over the next several days, the motorcycle was disassembled. The exhaust pipes and engine were used, as replacement parts, on a motorcycle belonging to Airman Charles A. Hofmeister. Some seven months later, with the assistance of Hofmeister, the frame and other parts of the stolen motorcycle were recovered partially buried in mud and water under a bridge.

The extent of the accused's involvement was however disputed. Hofmeister was the principal prosecution witness. He testified that the accused and "Zombie," a civilian who lived with the accused, stole the motorcycle using a key furnished by Hofmeister. According to Hofmeister, the accused and "Zombie" took the motorcycle apart; Hofmeister, in return, received the exhaust pipes and the engine at a cut-rate price; and the accused also assisted in dumping the remaining unused parts of the stolen motorcycle. Hofmeister's testimony as to events after the theft was partly corroborated by other evidence. Conversations concerning the theft and subsequent disposition of the stolen property occurred both on and off base.

Part of the prosecution evidence consisted of the accused's pretrial statement, admitted at trial without objection. In that statement, the accused denied any participation in the theft and claimed that Hofmeister alone took the motorcycle apart. The accused did admit knowing the motorcycle was stolen when it was at his residence.

At trial, the defense asserted that the court-martial lacked jurisdiction over the accessory after the fact and receiving stolen property offenses. Appellate defense counsel, reasserting the claim, point out that these offenses occurred off base, that the accused was off duty and that civilian courts were open and functioning. Although the motorcycle was stolen on base from a military member, this does not confer jurisdiction in their view. To support this position, appellate counsel rely upon two cases from the United States Court of Military Appeals. In *United States v. Tucker*, 1 M.J. 463 (C.M.A.1976), an accused's conviction for concealing stolen property off base was reversed for lack of jurisdiction even though the property had been stolen on base. In *United States v. Smith*, 5 M.J. 129 (C.M.A.1978), a conviction for the off-base endorsement and negotiation of a stolen money order was reversed, for lack of jurisdiction, although the accused had received the stolen money order on base.

Despite initial appearances, this case, in our view, is not controlled by *Smith* and *Tucker*. We recognize the primacy of the locus of the offense in determining jurisdiction. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *United States v. Hedlund*, 2 M.J. 11 (C.M.A.1976); *United States v. Smith, supra*. Indeed, if the accused had only been charged with the convicted offenses, summary reversal based on those precedents would be appropriate.

However, the locus of an offense off base has never *necessarily* precluded jurisdiction. *United States v. Trottier*, 9 M.J. 337 (C.M.A.1980); *United States v. Whatley*, 5 M.J. 39 (C.M.A.1979); *United*

States v. Wren, 7 M.J. 744 (A.F.C.M.R. 1979); United States v. Rock, 49 C.M.R. 235 (A.F.C.M.R.1974), pet. denied, 23 U.S.C. M.A. 632 (C.M.A.1974). Under the particular facts of this case, we find jurisdiction was properly exercised.[1]

Here, the nature and extent of accused's criminal liability was sharply contested. The panel was asked to choose between two contradictory theories based on conflicting evidence. Under one theory—that the accused was the thief—jurisdiction was clear. Relford v. Commandant, supra. Under the other theory, jurisdiction was questionable. However, we do not believe that jurisdiction, once having obtained, was somehow lost when the court-martial members applied one theory of criminal liability, based on the facts as they found them, rather than the other theory.

Moreover, the proper administration of justice required that a single court decide the issues at a single trial.[2] Only a single court dealing with both charges could, on the total evidence, properly decide accused's guilt. To hold otherwise would permit an accused potentially to defeat any criminal liability. For example, assume the accused were now charged with being an accessory after the fact in a Texas court. He could defeat that charge, using Hofmeister as a witness, on the basis that he was one of the thieves.

The decision that the distinct military interest could only be vindicated adequately at a court-martial was thus fully justified. Schlesinger v. Councilman, 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975). Consequently we hold that the court-martial which tried the accused had jurisdiction over the offenses of which the accused was convicted. It was the appropriate forum to decide the accused's liability in a criminal enterprise which occurred on base and off base and affected the security of the installation and the property of a service member.[3]

We have considered the remaining assignment of error and have resolved it adversely to the accused. Accordingly, the findings of guilty and the sentence are correct in law and fact and are

AFFIRMED.

EARLY, Chief Judge, and KASTL, Judge, concur.

---

1. The primary interest of the government was clearly in pursuing the charged larceny and conspiracy. However, if, in a case such as this, it was clear at the outset an accused's criminal activity occurred off base, existing precedents would preclude jurisdiction.

2. The State of Texas also apparently agreed. One of the exhibits at trial considered by the military judge in deciding jurisdiction was a letter by an Assistant District Attorney. There, he requested that the military assume jurisdiction in the case against the accused. See United States v. Cart, 36 C.M.R. 858 (A.F.B.R.1966), pet. denied, 16 U.S.C.M.A. 650, 36 C.M.R. 541 (1966).

3. When the property was taken from on base, a threat to the security and integrity of the installation and a flouting of military authority ensued. The accused, the victim and one of the admitted thieves, Hofmeister, were all military members—thus the morale, discipline and reputation of military members and military units were involved. We further find that the accused, at the time of the offenses, knew the property had been stolen on base from a military member. Compare this with the lack of knowledge as to the status of the victim in United States v. Tucker, 1 M.J. 463, 465 (C.M.A.1976). Cf. United States v. Hedlund, 2 M.J. 11 (C.M.A.1976).