**UNITED STATES, Appellee,**

v.

**Specialist Four Mario L. PETITTI, SSN 394–72–4650, United States Army, Appellant.**

**SPCM 17403.**

U. S. Army Court of Military Review.

21 Sept. 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, Major Joyce E. Plaut, JAGC, and Captain Jon S. Pascale, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Michael R. Smyth-

ers, JAGC, and Captain Richard P. Laverdure, JAGC, were on the pleadings for appellee.

Before MELNICK, McKAY and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

McKAY, Judge:

This case is before the Court for mandatory review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976). The only issue presented is whether there is jurisdiction over an offense of communication of a threat between two service members that occurred off-post and in the civilian community. We hold there is jurisdiction.

The appellant, Specialist Four Petitti, was convicted, contrary to his pleas, at a special-court martial bench trial of using and selling marihuana and communicating a threat. The convening authority reduced the adjudged sentence of confinement and forfeiture of $365 pay per month from five months to three months for each, and otherwise approved the sentence that also included reduction to Private E–1 and a bad-conduct discharge. In his brief to this Court, the appellant asserts the military judge erred to his substantial prejudice by denying his motion to dismiss the communication of a threat offense for lack of subject matter jurisdiction.

The facts necessary to resolve the asserted error establish that on 2 October 1981, Specialist Four Russell K. Lewis, while acting as a confidential informant for military police authorities, made a controlled buy of marihuana from the appellant in his government assigned family quarters at Fort Irwin, California, a military installation. While present in the appellant's quarters, Lewis observed the appellant smoke marihuana. Lewis turned over the marihuana he purchased from the appellant to the military police and reported the appellant's use of marihuana. Later that afternoon, military police authorities raided the appellant's quarters.[1] At the outset of the raid, a copy of the authorization to search his quarters, with supporting information, was given to the appellant. From the information thus provided, it could be deduced that Lewis had informed the police about the appellant's drug activities. On 3 October 1981, Specialist Lewis, for personal reasons, went to the home of Sergeant Brewer, another service member, located approximately five miles east of Barstow, California. Barstow is the nearest town to Fort Irwin and is located some thirty-seven miles southwest of that military post. There is virtually nothing but desert between the two.[2] There were other military personnel present at Sergeant Brewer's and, soon, the appellant arrived with another soldier for a social visit. Shortly after his arrival, the appellant confronted Lewis with his copy of the search authorization. When Lewis denied knowing anything about it, an argument developed during which the appellant threatened Lewis as indicated in the communication of a threat specification.[3] The incident was quieted by

1. During the raid, 191 grams of marihuana, eight marihuana plants and some marihuana seeds were confiscated. Together with the present charges, the appellant was tried and convicted of possession of this contraband, but his conviction was disapproved by the convening authority who found the search authorization was defective.

2. Barstow's relationship to Fort Irwin is very close and when one leaves Fort Irwin, the only road goes to Barstow. It is the "Post Town" in the same respect as cities located immediately outside the gates of other posts, e.g., Lawton, Oklahoma—Fort Sill, Columbus, Georgia—Fort Benning, San Antonio, Texas—Fort Sam Hous-

ton. For all practical purposes, Barstow is in the vicinity of Fort Irwin.

3. The specification reads: In that Specialist Four Mario L. Petitti, U.S. Army, 31st Maintenance Company, National Training Center, did, at San Bernardino County, California, in the vicinity of Fort Irwin, California, a military installation, on or about 3 October 1981, wrongfully communicate to Specialist Four Russell K. Lewis a threat to cause bodily harm to the said Specialist Lewis by saying to him "I'm going to get you. You're a dead man. I'm going to run you off the road," and "you ain't going to get back to Irwin;" and that said threat was directed towards a member of the

Sergeant Brewer, and Lewis, who had become afraid, departed for a United States Marine Base at Barstow where he identified himself to authorities and asked for protection.

The appellant argues that there is no jurisdiction over the threat offense because it did not occur on a military installation but off-post away from military control, within the territory of the United States, and during peacetime. He also points out that there was no connection between his military duties and the offense, nor was he engaged in the performance of any duty relating to the military. In short, he contends there is no jurisdiction because the offense is not "service-connected".

■■■ Without question there must be service-connection for a court-martial to have jurisdiction over an offense that occurs in the United States during peacetime. *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); *United States v. Borys,* 18 U.S.C.M.A. 547, 40 C.M.R. 259 (1969). Moreover, while status as a member of the armed forces is a constitutional predicate to the exercise of court-martial jurisdiction over the person, *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955), service-connection cannot be established solely because of it. *United States v. Hedlund,* 2 M.J. 11 (1976). Most offenses occurring on-post and between service members, or against property thereon, however, are service-connected and there is court-martial jurisdiction. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). With respect to those offenses by service members that are committed off-post, the Supreme Court has provided twelve factors by which the offense should be analyzed for service-connection. *Relford v. Commandant, supra* 401 U.S. at 365, 91 S.Ct. at 655. In the past, the analytical process has been required to be completed on a case-by-case, offense-by-offense basis. *United States v. Alef,* 3 M.J.

414 (C.M.A.1977); *United States v. Hedlund, supra.* Recently, however, applying the *Relford* factors to a situation where the accused was charged with the off-post sale of drugs, the Court of Military Appeals concluded "that almost every involvement of service personnel with the commerce in drugs is 'service connected'." *United States v. Trottier,* 9 M.J. 337, 350 (C.M.A.1980). We believe that unlawful interference with military police law enforcement activities against illegal on-post drug trafficking is involvement "with the commerce in drugs" as that term is used in *Trottier.* Should we hold otherwise, the determination of court-martial jurisdiction by the Court in *Trottier* would have little meaning. For if the military police are unable to carry out normal and legitimate police investigation and procedures without illegal interference in drug cases, military personnel who choose thus to break the law are not likely to be brought before courts-martial for trial.

■■■ The use of confidential informants is, in our opinion and experience, not only common, but it is one of the more effective means that military police authorities have in detecting and stopping the drug traffic on military installations in general and troop barracks in particular. *Cf., United States v. Garcia,* 1 M.J. 26 (C.M.A.1975); *United States v. Kelker,* 50 C.M.R. 410 (A.C. M.R.1975); *United States v. Heitmann,* 46 C.M.R. 1242 (A.F.C.M.R.1973). If their effective employment is to continue, military authorities must be able to accord individual informants not only physical protection, but also protection through the legal process. They must therefore be able to prosecute offenses committed against them by military personnel when those offenses arise from or are closely connected to an informant's drug enforcement activities. In the absence of that authority, the adverse impact upon military discipline, law enforcement on military installations and

United States Armed Forces who had acted as a confidential informant against said Specialist Petitti, and as such represented a flouting of military authority and a threat to military criminal investigative activities; that the commis-

sion of the offense necessitated transfer of the victim to another installation to insure his safety; and that the offense is not one which is traditionally prosecuted in the civilian courts.

military readiness is real, foreseeable and incalculable.

The threat offense in this case arose as a direct result of Lewis' role as a confidential informant with respect to the appellant's illegal sale and use of marihuana on a military installation on the preceding day. It occurred after the appellant confronted Lewis with a copy of the search authorization for his government assigned quarters and accused him of being the confidential informant who had reported his on-post illegal drug involvement. The threat was plainly made to Lewis because of his conduct as an informant, and thereby related to the performance of Lewis' on-post police activities and military duties even though it occurred some thirty miles from Fort Irwin.

We believe that the off-post location of the occurrence of the threat in this case is not as meaningful in testing for service-connection as are the other factors present that affect the law enforcement process on Fort Irwin.[4] What is more significant and, therefore, in our view, controlling, is the relationship of the offense to on-post official operations against drug commerce involving other informants. If informants cannot be secure in the knowledge that those who would harm them because of their activities as informants will be prosecuted promptly and effectively, then few are likely to take on such roles with their inherent risks. This would cause a decrease in the ability of military law enforcement authorities to stop the on-post trafficking in drugs. The resulting adverse impact on discipline, law and order and military preparedness is obvious. Therefore, when an offense against an informant occurs because of his activities in that capacity, the off-post location of the occurrence, or whether it happened in time of war or peace, does not decide service-connection and the issue of jurisdiction. Cf., United States v. Trottier, supra; United States v. Valles-Santana, 2 M.J. 1049 (A.C. M.R.1976), aff'd, 4 M.J. 84 (C.M.A.1977).

The facts and circumstances of this case persuade us overwhelmingly that the threat made to Lewis by the appellant was directly linked to commerce in drugs, and had a substantial impact upon military discipline and law and order in the military community of Fort Irwin. The military readiness of the command itself was thus affected by the commission of the offense by the appellant. There is an interest, indeed a necessity, for the military to be able to prosecute an offense occurring under these circumstances. When off-post illegal conduct impacts to this extent upon the military command, there is service-connection. Accordingly, we hold that there is subject matter jurisdiction when a threat of bodily harm is made off-post by a service member to a confidential informant, also a service member, because of his participation in a controlled buy and his report of illegal use of marihuana on a military installation.

The findings of guilty and the sentence are affirmed.

Senior Judge MELNICK and Judge LEWIS concur.

---

4. Nevertheless, we do note that in this case, even though the offense occurred some thirty miles from Fort Irwin, it took place at the home of another service member, only soldiers were present and that Barstow is for all practical purposes "in the vicinity" of Fort Irwin.