**UNITED STATES, Appellee,**

v.

**Private (E–2) Charles JOHNSON, SSN
420–82–4248, United States
Army, Appellant.**

**CM 441927.**

U. S. Army Court of Military Review.

29 Oct. 1982.

Captain Brett L. Antonides, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, and Captain Joseph A. Russeiburg, JAGC.

Captain Arthur L. Passar, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, and Major Thomas M. Curtis, JAGC.

Before FULTON, HANFT and NAUGHTON, Appellate Military Judges.

OPINION OF THE COURT

NAUGHTON, Judge:

Appellant was convicted by a military judge sitting as a general court-martial of absence without leave in excess of one year and wrongful appropriation of a motor vehicle, violations of Articles 86 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 921 (1976). He was sentenced to a bad-conduct discharge, confinement at hard labor for nine months, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. Pursuant to a pretrial agreement, the convening authority approved the sentence but suspended, for a period of six months, the confinement in excess of six months and the forfeitures in excess of $366.00 pay and allowances per month for six months. The main issue to be determined is whether the court-martial lacked jurisdiction over the wrongful appropriation offense.

The providence inquiry reflects that on 19 July 1980, at Fort Sheridan, Illinois, appellant rented a car owned by a member of his unit, Specialist Four Clyde King. In exchange for the sum of $50.00, appellant was to have the use of the car to travel from Fort Sheridan to Chicago, Illinois, and back. Appellant told Specialist King that he would return the car the following day. At 2300 hours, 19 July, appellant departed Fort Sheridan and drove to an off-post apartment in Chicago to visit a "lady friend." Upon awakening the following morning at the off-post apartment, appellant decided not to return to his unit. Appellant did not return the car until Specialist King came to Chicago a few days later, at appellant's request, and retrieved it. Appellant remained absent from his unit until 10 September 1981 when he turned himself in to the Chicago police.

Appellant asserts for the first time on appeal that the court-martial lacked sub-

ject-matter jurisdiction over the alleged wrongful appropriation. Under the particular facts of this case, we find that the exercise of jurisdiction was warranted and affirm.

In 1969 the Supreme Court held that court-martial jurisdiction extends only to "service connected" offenses. *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). Two years later in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), the Court defined service connection in terms of a number of factors to be balanced on a case-by-case basis. These factors are to be weighed in resolving the fundamental question, "whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts." *Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591, 610 (1975). With the possible exception of a single category of offenses, *see United States v. Trottier,* 9 M.J. 337 (C.M.A.1980), the Court of Military Appeals endorses this *ad hoc* approach to court-martial jurisdiction. *United States v. Moore,* 1 M.J. 448 (C.M.A.1976).

Appellant's attack on jurisdiction focuses on his uncontroverted assertion during the plea inquiry that he did not form the intent to withhold the car until he woke up in Chicago and decided to remain absent without leave.[1] The offense was thus committed off-post, and, appellant asserts, the only factor of military significance is that both appellant and his victim were fellow soldiers. Citing, among other decisions, *United States v. Hedlund,* 2 M.J. 11 (C.M.A. 1976), appellant reminds us that court-martial jurisdiction over an off-post offense cannot be predicated "solely upon the military status of both the wrongdoer and the victim." *Id.* at 14.

In *United States v. Wren,* 7 M.J. 744 (A.F.C.M.R.1979), the Air Force Court of Military Review discerned court-martial jurisdiction over a wrongful appropriation offense remarkably similar to appellant's. Eschewing an analysis emphasizing the situs of the formation of criminal intent, which had apparently been significant in earlier decisions of the Court of Military Appeals, *see, e.g., United States v. Strangstalien,* 7 M.J. 225, 226 (C.M.A.1979); *United States v. McCarthy,* 2 M.J. 26 (C.M.A. 1976), the Court rested its decision on the commander's interest in the accused, the victim and his property, and the bailment contract entered into on post by which the accused gained his initial lawful possession of the vehicle.

Although rigid application of the "twelve *Relford* factors" might suggest that court-martial jurisdiction was lacking over the wrongful appropriation, *see e.g., United States v. Sims,* 2 M.J. 109 (C.M.A.1977); *United States v. Hedlund, supra,* the validity of such an approach is in doubt after *United States v. Trottier, supra.* In that case, the Court of Military Appeals relied heavily on four of what it called the "nine other considerations" expressed in *Relford,* including the military's interest in the security of persons and property on a military enclave, the commander's responsibility to maintain order in his command, and the distinct possibility that civilian courts will have insufficient concern or capacity to vindicate the military's disciplinary authority. *Id.* at 341, 352. Even though *Trottier* dealt with off-post drug offenses, we believe the Court's reassessment of its "slavish" application of the twelve *Relford* factors, *id.* at 343, has broader implications. *See United States v. Lockwood,* 11 M.J. 818 (A.F.C.M.R. 1981).

We conclude the military interests in appellant's wrongful appropriation outweigh those of the civilian community. The vic-

---

1. The Government notes, however, that the appellant failed to except from his plea the jurisdictional language alleged in the wrongful appropriation specification, to wit: "Jurisdiction further attaches to the Military since the said Private E2 Johnson entered into an agreement with Specialist Four King to rent his vehicle on Fort Sheridan, Illinois, an installation under the exclusive military control, and utilized the said motor vehicle to absent himself without authority from his unit," and that he further stipulated to those facts.

tim was a service member with whom appellant was apparently acquainted through military duties and quartering. *Cf. United States v. Whatley,* 5 M.J. 39 (C.M.A.1978). The agreement by which appellant obtained the car, albeit legitimately, was entered into on post and provided for return of the car to post. The car itself was apparently garaged on post. Because we perceive appellant's wrongful appropriation had no direct impact on the civilian community, we conclude the civilian interest in this offense was negligible. Under these circumstances we believe the military's distinct interest in its personnel and their property supports the exercise of court-martial jurisdiction over the off-post wrongful appropriation.[2]

Only so much of the finding of the Specification of Charge III as finds that the appellant did on or about 20 July 1980, without authority, absent himself from his unit and remain so absent until on or about 10 September 1981 is affirmed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms the sentence.[3]

Senior Judge FULTON and Judge HANFT concur.

**2.** As appellant notes, the military judge erred in entering findings of guilty of unauthorized absence beginning 19 July 1980 when the stipulation of fact and appellant's factual recitation during the plea inquiry establish an inception date of 20 July 1980. We will correct in our decree the military judge's omission formally to amend the specification or to enter findings by appropriate exceptions and substitutions. We also note that the termination date of 10 September 1981 was erroneously transcribed into the record as 20 September 1981 and thereafter copied in the promulgating order. We will also issue a certificate correcting this matter.

**3.** The forfeitures shall apply only to pay becoming due after the date of the convening authority's action.